# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Long John Silver's Restaurants,
Incorporated; Long John Silver's,
Incorporated,

    *Plaintiffs-Appellants,*

v.

Erin Cole; Nick Kaufman; Victoria
McWhorter,

    *Defendants-Appellees.*

Secretary of Labor,

   *Amicus Supporting Appellants.*

No. 06-1259

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry F. Floyd, District Judge.
(6:05-cv-03039-HFF)

Argued: December 6, 2007

Decided: January 28, 2008

Before MICHAEL and KING, Circuit Judges, and
Catherine C. BLAKE, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Michael and Judge Blake joined.

## COUNSEL

**ARGUED:** Kenneth Steven Geller, MAYER BROWN, L.L.P., Washington, D.C., for Appellants. Edward D. Sieger, Senior Appellate Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Supporting Appellants. Morris Reid Estes, Jr., STEWART, ESTES & DONNELL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Robert P. Davis, David M. Gossett, Tamara S. Killion, MAYER, BROWN, ROWE & MAW, L.L.P., Washington, D.C.; John F. Dienelt, Scott McIntosh, DLA PIPER RUDNICK GRAY CARY, L.L.P., Washington, D.C.; Henry L. Parr, Jr., J. Theodore Gentry, Hannah Rogers Metcalfe, WYCHE, BURGESS, FREEMAN & PARHAM, P.A., Greenville, South Carolina, for Appellants. Thomas J. Ervin, KATHRYN WILLIAMS, P.A., Greenville, South Carolina; Darrell L. West, STEWART, ESTES & DONNELL, Nashville, Tennessee; Brian P. Murphy, Greenville, South Carolina, for Appellees. Howard M. Radzely, Solicitor of Labor, Gregory F. Jacob, Deputy Solicitor, Nathaniel I. Spiller, Assistant Deputy Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Supporting Appellants.

## OPINION

KING, Circuit Judge:

Long John Silver's Restaurants, Incorporated, and Long John Silver's, Incorporated (collectively, "LJS"), seek appellate relief from a January 20, 2006 ruling of the district court declining to vacate an arbitration award. *Long John Silver's Rests., Inc. v. Cole*, No. 6:05-cv-03039-HFF (D.S.C. Jan. 20, 2006) (the "Opinion").[1] In the underlying arbitration proceedings, three former LJS managerial employees, Erin Cole, Nick Kaufman, and Victoria McWhorter (the "Claimants"), contended that LJS violated the Fair Labor Standards Act (the "FLSA") by failing to pay them and other LJS employees the

---

[1]The Opinion can be found at J.A. 281-91. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

overtime compensation required by law. In September 2005, the arbitrator ruled, in his Class Determination Partial Final Award (the "Class Award"),[2] that the "opt-in" class certification provision of the FLSA (codified at 29 U.S.C. § 216(b)) did not apply in the arbitration proceedings. The arbitrator also ruled that, pursuant to the controlling arbitration agreement, the arbitration proceedings were governed by the "opt-out" class certification provision of the Supplementary Rules for Class Arbitrations of the American Arbitration Association (the "AAA Class Rules").

In this appeal, LJS contends that the district court erred in two respects when it declined to vacate the Class Award: first, in failing to recognize that the arbitrator, in making the Award, had manifestly disregarded controlling legal principles; and, second, in failing to recognize that the arbitrator had exceeded the scope of his authority. As explained below, we reject these contentions and affirm.

I.

A.

As background in this matter, the Claimants are former managers and managerial assistants of various LJS restaurants. They maintain that LJS has been engaged in unlawful employment practices, subjecting them and others to payroll deductions and salary givebacks to cover losses in LJS's restaurant operations. These unlawful practices, according to the Claimants, violated the FLSA and its regulations on overtime pay, and resulted in insufficient compensation being paid to them and others.

In 1995, LJS initiated a mandatory arbitration procedure and commenced the use of a uniform arbitration agreement for disputes with its employees. The arbitration agreement prepared for this purpose was executed by each of the Claimants. The agreement provides, in pertinent part, that

> [a]ny arbitration will be administered by the American Arbi-

---

[2]The Class Award can be found at J.A. 47-71.

tration Association under its commercial arbitration rules (except as modified herein) . . . . The arbitrator shall apply the substantive law (and the laws and remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending upon the claims asserted.

J.A. 84.

The AAA Class Rules empower an arbitrator to make certain determinations about whether an arbitration agreement permits an arbitration proceeding to be conducted as a class arbitration. In the event that the agreement so permits, the arbitrator must decide whether the arbitration should proceed as a class arbitration by considering the criteria enumerated in the AAA Class Rules, as well as "any law or agreement of the parties the arbitrator determines applies to the arbitration." *See* AAA Class Rule 4(a). When the arbitrator has decided that the arbitration should proceed as a class arbitration, he must set forth the basis for that decision in a Class Determination Award, which defines the class, the notice to be given, and the grounds for exclusion of class members. *See* AAA Class Rule 5. AAA Class Rule 7 provides that a final award on the merits of a class arbitration must define the class "with specificity," including "those who have elected to opt out of the class."

Like the AAA Class Rules, § 16(b) of the FLSA contains a provision governing class action proceedings. Unlike the "opt-out" provision of the AAA Class Rules, however, § 16(b) of the FLSA is an "opt-in" class provision, providing that

> [n]o employee shall be a party plaintiff to any . . . action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (the "FLSA § 16(b) provision" or the "§ 16(b) provision").

## B.

On January 21, 2004, Claimants Cole and Kaufman initiated an arbitration proceeding before the AAA, on behalf of themselves and others similarly situated. They alleged that LJS, in failing to properly compensate them, had violated the FLSA.[3] On March 4, 2005, the Claimants filed an amended arbitration complaint with the AAA, adding McWhorter as a representative claimant and seeking class certification pursuant to the AAA Class Rules. LJS then secured rulings from the arbitrator on certain class certification issues, ultimately leading to this appeal.

First, on June 15, 2004, the arbitrator made a clause construction award, ruling that the arbitration agreement did not preclude a class arbitration proceeding. Although the award did not decide whether a class would ultimately be certified in the arbitration proceeding, LJS promptly initiated suit in the district court, seeking to vacate the award. LJS made two assertions in its lawsuit: (1) that the FLSA § 16(b) provision permitting employees to pursue collective actions is a procedural right, and thus had been waived by the arbitration agreements; and (2) that conducting a class arbitration proceeding is inconsistent with the FLSA. On September 15, 2005, the district court dismissed that suit for lack of subject matter jurisdiction. *See Cole v. Long John Silver's Rests., Inc.*, 388 F. Supp. 2d 644 (D.S.C. 2005).[4]

Next, on September 19, 2005, the arbitrator issued its Class Award, which LJS challenges in this appeal. In the Class Award, the arbitra-

---

[3]A related civil action involving similar compensation issues had been previously initiated by a former LJS managerial employee in a Tennessee federal court. That case was dismissed in 2004 because the claims were deemed subject to arbitration. *See Johnson v. Long John Silver's Rests., Inc.*, 320 F. Supp. 2d 656 (M.D. Tenn. 2004), *aff'd*, 414 F.3d 583 (6th Cir. 2005). After the Tennessee lawsuit was filed, Johnson sought certification of an "opt-in" class pursuant to the FLSA § 16(b) provision. LJS opposed any such class certification, however, and moved to compel arbitration.

[4]LJS initially pursued an appeal in this Court of the district court's dismissal of its challenge to the clause construction award. On January 10, 2007, the appeal was dismissed at LJS's request.

tor ruled that the Claimants could serve as representative plaintiffs in an "opt-out" class arbitration proceeding — the class being composed of current and former LJS managerial employees having potential FLSA claims. In rendering the Class Award, the arbitrator was called upon to address the apparent conflict between the "opt-in" aspect of the FLSA § 16(b) provision, on the one hand, and the "opt-out" aspect of the AAA Class Rules, on the other. In the Class Award, the arbitrator decided that, because "there is no evidence of any congressional intent" to make the right to the "opt-in" requirement of the § 16(b) provision nonwaivable, the FLSA did not preclude enforcement of the parties' agreement to arbitrate pursuant to the AAA Class Rules. Class Award 7. Accordingly, the arbitrator applied the "opt-out" provisions of AAA Class Rule 7.

## C.

On October 25, 2005, LJS filed suit in the District of South Carolina, seeking to vacate the Class Award, and challenging the arbitrator's ruling that the FLSA § 16(b) provision was not controlling.[5] On January 20, 2006, the district court filed its Opinion denying LJS's request for relief. By the Opinion, the court rejected LJS's contention that the FLSA dispositively provides employees a nonwaivable substantive right to "opt-in" proceedings under the § 16(b) provision. Having determined that no "clear principle of law bound the arbitrator in this case," the court further ruled that the arbitrator had satisfied his obligation to render a reasoned award, that he had not manifestly disregarded the applicable legal principles, and that he had instead "thoroughly analyzed the relationship of [the § 16(b) provision] and the arbitration agreement." Opinion 7. Indeed, as the court recognized, because the arbitration agreement "undoubtedly gave the arbitrator authority to invoke equity, it provided him with the power to render any relief which a court could award." *Id.* at 9. LJS has appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[5]The Secretary of Labor made an *amicus curiae* submission to the district court supporting LJS's motion to vacate. More particularly, she asserted that the FLSA § 16(b) provision constituted substantive law and was nonwaivable.

## II.

In conducting an appellate review of a district court's refusal to vacate an arbitration award, we are obliged to accept findings of fact that are not clearly erroneous and to assess conclusions of law de novo. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-49 (1995). Importantly, any judicial review of an arbitration award is "extremely limited," and is, in fact, "among the narrowest known to the law." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted). As we have consistently recognized, a reviewing court is entitled to "determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

An arbitration award may be vacated if it fails to draw its essence from the controlling agreement. *United Paperworkers Int'l Union*, 484 U.S. at 36. And such an award may be overturned if it flowed from an arbitrator's manifest disregard of the applicable law. *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998). In order to secure judicial relief on such grounds, it must be shown that the arbitrator, in making his ruling, was "aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). As one of our sister circuits has explained, an arbitrator does not act in manifest disregard of the law unless: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

## III.

LJS makes two contentions in support of its position on appeal. First, it maintains that the arbitrator's certification of an "opt-out"

class resulted from a manifest disregard of the applicable legal principles, and that, in particular, the arbitrator disregarded the FLSA § 16(b) provision. Second, LJS asserts that the arbitrator exceeded the scope of his authority in certifying an "opt-out" arbitration class, rather than applying the "opt-in" aspect of the § 16(b) provision.

A.

In pursuing these contentions, LJS asserts, as a threshold matter, that an employee cannot be made a party to an FLSA-related civil proceeding without his consent, and that this statutory right, being both fundamental and substantive, is not waivable.[6] The apparent conflict between the AAA Class Rules and the FLSA § 16(b) provision would necessarily be resolved in favor of an "opt-in" procedure if the consent requirement of § 16(b) is a substantive right, not waivable by an arbitration agreement. As the Supreme Court noted in *Gilmer v. Interstate/Johnson Lane Corp.*, parties who agree to arbitrate a statutory claim "do[ ] not forgo the substantive rights afforded by the statute," but rather "submit[ ] to their resolution in an arbitral, rather than a judicial, forum." 500 U.S. 20, 26 (1991) (internal quotation marks omitted). It is well-settled that a contract to arbitrate an FLSA claim will not be enforceable if "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). Therefore, in order to prove that the "opt-in" requirement of the FLSA could not be waived by the parties' agreement to arbitrate under the AAA Class Rules, LJS must demonstrate that Congress expressly intended to preclude a waiver of the "opt-in" procedure for class arbitration of FLSA claims, by reference to "the text of the FLSA, its legislative history, or an 'inherent conflict'" between the AAA Class Rules and the FLSA's "underlying purposes." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002); *see also Gilmer*, 500 U.S. at 26.

---

[6]In an *amicus curiae* submission in this appeal, the Secretary of Labor supports LJS's position, asserting, as she did in the district court, that the "written consent" provision of the FLSA § 16(b) provision is a substantive and unwaivable right.

LJS has failed to make any such demonstration here. For example, LJS posits that, in the FLSA § 16(b) provision's mandate that "consent [must be] filed in the court in which such action is brought," the word "court" must be accorded its general meaning, which, LJS asserts, would include an arbitration forum. LJS also references a portion of the legislative history of the § 16(b) provision — particularly, the remarks of Senator Donnell during a 1947 Senate debate on FLSA amendments that included the § 16(b) provision — suggesting that it would be "'unwholesome'" to allow suits under the FLSA which are "'not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit.'" Br. of Appellants 27-28 (citing *Arrington v. Nat'l Broad. Co.*, 531 F. Supp. 498, 502 (D.D.C. 1982) (quoting 93 Cong. Rec. 2182 (1947)));[7] *see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (observing that Congress enacted the § 16(b) provision "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Although LJS's references to the text and legislative history of the FLSA reassure us of Congress's intention that the "opt-in" procedure should apply in arbitration as in court proceedings, they fail to also convince us that Congress expressly intended that the "opt-in" procedure could not be waived by the parties' agreement to an alternate procedure.

We also are not persuaded by LJS's reliance on a prior decision of this Court. LJS highlights a footnote in *Adkins v. Labor Ready, Inc.*, in which we observed that the fee provision in § 16(b) (a provision LJS contends is analogous to the "opt-in" aspect of the § 16(b) provi-

---

[7]Senator Donnell's remarks during the proposed 1947 debate on the FLSA amendments included the following:

> "Obviously, . . . this is a wholesome provision, for it is certainly unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him, and then later on have 10,000 men join in the suit, which was not brought in good faith, was not brought by a party in interest, and was not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit."

*Arrington*, 531 F. Supp. at 502 (quoting 93 Cong. Rec. 2182 (1947)).

sion) is a substantive right retained by parties in arbitration. *See* 303 F.3d at 502 n.1. LJS acknowledges, however, that no court has explicitly ruled that the "opt-in" provision of the § 16(b) provision creates a substantive, nonwaivable right.[8] Put simply, it is far from clear that the "opt-in" aspect of the § 16(b) provision is such a nonwaivable substantive right. Having so concluded, we turn to LJS's contentions that the arbitrator manifestly disregarded the applicable legal principles and exceeded the scope of his authority in rendering the Class Award.

B.

1.

In its first contention, LJS asserts that the district court erred in refusing to vacate the Class Award on the basis that the arbitrator had manifestly disregarded applicable federal law — namely, the FLSA § 16(b) provision's "opt-in" requirement. As discussed above, any judicial review of an arbitration award must be an extremely narrow exercise. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000); *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). In order to overturn an arbitration award on the basis of the arbitrator's manifest disregard of the law, the party pursuing that effort must sustain a heavy burden, and is obliged to show that the arbitrator knowingly ignored applicable law when rendering his decision. *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994).

In making the Class Award, the arbitrator specifically assessed the

---

[8]By contrast, the Claimants point out that the Supreme Court has recognized that employees are entitled to waive their right to collective action by agreeing to mandatory arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (upholding compulsory arbitration agreement under the Age Discrimination in Employment Act of 1967). If the right to initiate a collective action can be waived, as the Claimants assert, it may be inferred that an "opt-in" procedure relating to any such right (here, the FLSA § 16(b) provision) can also be waived.

possibility that "Congress [had] evinced an intention to preclude a waiver of judicial remedies" for the consent mandate of the FLSA § 16(b) provision. Class Award 7 (citing *Gilmer*, 500 U.S. at 26). He concluded, however, that "there is no evidence of any congressional intent which would impose an opt-in provision upon a class action being privately arbitrated," and thus that such a procedure remained waivable. *Id.* After careful analysis, the arbitrator then ruled in the Class Award that the use of an "opt-out" class in the class arbitration proceeding was proper. According to the arbitrator, LJS's pretrial maneuvering in the *Johnson* case, *see supra* note 3, had occasioned a substantial delay in the processing of potential claims, and had threatened the resolution of legitimate claims, such that the adoption of the "opt-in" procedure of the § 16(b) provision "would now create a fundamental unfairness" by "significantly reduc[ing] the class population in derogation of fundamental FLSA objectives." Class Award 10. On this point, the arbitrator emphasized that equity would be better served by safeguarding the rights of potential claimants "'sidelined' during the progress of this case." *Id.* at 11. And the arbitrator reasoned that the "opt-out" procedure best achieved FLSA's objective of permitting states (and by analogy, private parties) to "adopt higher standards than those established in the [FLSA]," as well as the Federal Arbitration Act's preference for "the procedural rules defined by private contract." *Id.* at 8.

In rejecting LJS's challenge to the Class Award, the district court acknowledged the uncertainty as to whether Congress intended to apply the FLSA § 16(b) provision's "consent in writing" requirement in arbitration proceedings, and concluded that the arbitrator was not, therefore, bound by any "clear principle of law" in rendering the Award. Opinion 5. The court further observed that the parties had been accorded "a full and fair opportunity to present their competing views of the relevance of FLSA § 16(b) to the arbitration proceedings," and that the Class Award was based on a reasonable interpretation of the FLSA and the Federal Arbitration Act. *Id.* at 7.

On this record, we are similarly convinced that the arbitrator "did his job." *See Mountaineer Gas*, 76 F.3d at 608. Because there is a debatable contention that the FLSA § 16(b) provision did not explicitly overrule the "opt-out" feature of the arbitration agreement, the arbitrator did not ignore the FLSA or any other applicable legal prin-

ciples when he certified an "opt-out" class in the Class Award, and LJS has thus not sustained its heavy burden to demonstrate otherwise. *See Remmey*, 32 F.3d at 149. The district court accordingly did not err in declining to vacate the Class Award on this basis.

2.

LJS's second appellate contention is that the district court erred in failing to vacate the Class Award on the ground that the arbitrator exceeded the scope of his authority under the arbitration agreement by certifying an "opt-out" arbitration class. On this point, LJS argues that the plain terms of the arbitration agreement required the arbitrator to "apply the 'federal law' regarding the claim at issue, provide 'the same protections as a court of law,' and award only that relief available in a 'court of law.'" Br. of Appellants 47. More specifically, LJS relies on specific language drawn from the arbitration agreement. *See* J.A. 81 ("If you win, the arbitrator can award you anything you might seek through a court of law."); *id.* at 84 ("The arbitrator shall apply the substantive law (and the laws of remedies, if applicable) in the state in which the claims arose, or federal law, or both . . . ."). LJS asserts that, by approving an "opt-out" class, the arbitrator ignored the terms of the agreement requiring him — in exercising the authority he derived therefrom — to apply the "opt-in" requirement of the FLSA § 16(b) provision.

The district court deemed LJS's argument on this point unpersuasive, observing that the arbitrator's decision in the Class Award to certify an "opt-out" class was simply a matter of contract interpretation, and thus well within his authority. The central question, as framed by the arbitrator and the court, was whether the arbitration agreement that incorporated the AAA Class Rules authorized the use of an "opt-out" procedure. With regard to the proposition that the arbitration agreement unambiguously required the arbitrator to adhere to the FLSA § 16(b) provision, the court disagreed, observing that the arbitrator was forced to interpret the agreement precisely "*because of* its ambiguity as to whether § 16(b) or the AAA rules would apply to class certification." Opinion 9 (emphasis in original).

Indeed, the first provision of the arbitration agreement upon which LJS relies — that an employee is entitled in arbitration to anything

he might seek in a court of law — appears only in a portion of the agreement generally describing the benefits of arbitration. And the second provision quoted by LJS — requiring the arbitrator to apply substantive law — could not have limited the arbitrator's authority in the manner LJS proposes, when, as we have already explained, it is far from clear that the "opt-in" procedure of the FLSA § 16(b) provision creates a substantive, nonwaivable right.[9]

In making our extremely limited review of the Class Award, we must, in these circumstances, agree with the district court that the arbitrator did not exceed the scope of his authority by certifying an "opt-out" class. *See Am. Postal Workers Union*, 204 F.3d at 527. As the district court recognized, the arbitrator "did what he was supposed to do: he analyzed two conflicting interpretations of the arbitration agreement and made a reasoned decision as to why an opt-out class should be certified." Opinion 9. The court thus correctly ruled that it lacked the authority to vacate the Class Award, which was "at the very most" only an arguable contravention of the arbitrator's powers. *Id.* at 10. In these circumstances, we are obliged to affirm the district court.

## IV.

Pursuant to the foregoing, we reject the appellate contentions of LJS with respect to the Class Award and affirm the Opinion of the

---

[9]LJS also asserts that the arbitrator, in making the Class Award, relied on his personal notions of right and wrong, thus exceeding the scope of his authority under the arbitration agreement. In support of this proposition, LJS relies on the arbitrator's statement in the Class Award that, in light of LJS's "endless procedural machination . . . in *Johnson* and . . . in this arbitration," "[e]quity is better served by preserving the rights of potential claimants who have been 'sidelined' during the progress of this case." Class Award 10-11. In this regard, we agree with the district court that LJS's assertion is contradicted by the fact that the arbitrator relied on settled principles in support of his reliance on equity, and by the provision of the arbitration agreement empowering the arbitrator to "award any relief which a court could award." Opinion 9.

district court.

*AFFIRMED*