PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WACHOVIA SECURITIES, LLC, a
Delaware Corporation and
successor in interest to AG
Edwards & Sons, Inc.,

*Plaintiff-Appellant,*

v.

FRANK J. BRAND, II, individual;
MARVIN SLAUGHTER, individual;
STEPHEN N. JONES, individual;
GEORGE W. STUKES, individual,

*Defendants-Appellees.*

No. 10-2111

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Terry L. Wooten, District Judge.
(4:08-cv-02349-TLW)

Argued: December 8, 2011

Decided: February 16, 2012

Before DUNCAN, DAVIS, and WYNN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Davis and Judge Wynn joined.

---

## COUNSEL

**ARGUED:** Stephen Montgomery Cox, ROBINSON, BRAD-SHAW & HINSON P.A., Rock Hill, South Carolina, for Appellant. Joseph A. Dougherty, BUCHANAN, INGER-SOLL & ROONEY, PC, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** J. Rene Josey, TURNER PADGET GRAHAM & LANEY, P.A., Florence, South Carolina; Andrew J. Shapren, BUCHANAN, INGERSOLL & ROONEY, PC, Philadelphia, Pennsylvania, for Appellees.

---

## OPINION

DUNCAN, Circuit Judge:

Wachovia Securities, LLC ("Wachovia")[1] appeals from the district court's refusal to vacate an arbitration award entered against it after it sued several former employees on what the arbitrators determined were frivolous claims. Wachovia argues that the arbitrators (the "Panel") violated § 10(a)(3) of the Federal Arbitration Act (the "FAA") and "manifestly disregarded" the law when they awarded $1.1 million in attorneys' fees and costs under the South Carolina Frivolous Civil Proceedings Act (the "FCPA"), codified at S.C. Code Ann. 15-36-10. For the reasons that follow, we affirm.

### I.

#### A.

Wachovia initiated an arbitration proceeding by filing a Statement of Claim with the Financial Industry Regulatory

---

[1]Wachovia Securities, LLC is now known as Wells Fargo Advisors, LLC. Wachovia Securities, LLC is a wholly owned subsidiary of Wachovia Securities Financial Holdings, LLC, which is, in turn, a wholly owned subsidiary of Wells Fargo and Company.

Authority ("FINRA")[2] against four former employees—Frank J. Brand, Stephen N. Jones, Marvin E. Slaughter, and George W. Stukes (collectively, the "Former Employees")—on June 27, 2008. The Former Employees, all individual financial advisors, were previously employees of A.G. Edwards & Sons, Inc. ("A.G. Edwards"), which merged with Wachovia on October 1, 2007. After the merger, the Former Employees became employees of Wachovia's Florence, South Carolina branch office. Wachovia terminated their employment on June 26, 2008. Following their termination by Wachovia, the Former Employees went to work for a competitor brokerage firm, Stifel Nicolaus & Co., Inc. ("Stifel").

In the arbitration proceeding, Wachovia alleged that the Former Employees had violated their contractual and common law obligations when they joined Stifel.[3] Specifically, Wachovia claimed that the Former Employees conspired with Stifel to open a competitor office in Florence, South Carolina, and that they had misappropriated confidential and proprietary information in the process. Wachovia further com-

---

[2]FINRA is a private corporation that succeeded the National Association of Securities Dealers and the enforcement divisions of the New York Stock Exchange as the self-regulatory organization for the securities industry. It sets rules governing both the business of securities firms and governing disputes arising from alleged violations of these rules. FINRA's rules governed the underlying arbitration proceeding because it was between a brokerage that is a member of FINRA and its employees. All of the parties signed FINRA Uniform Submission Agreements, which manifest their consent to arbitrate the present "matter in controversy" according to FINRA's rules.

[3]The same day it initiated FINRA arbitration, Wachovia sought injunctive relief in the United States District Court for the District of South Carolina during the pendency of the arbitration. Wachovia sought to prevent the former employees from soliciting Wachovia customers or employees and from using any other "Wachovia information" that they had acquired during their employment with Wachovia. The district court refused to enjoin the Former Employees from soliciting current Wachovia clients and employees but granted an injunction requiring that they cease using and return any of Wachovia's information, including client lists.

plained that the Former Employees were soliciting current Wachovia clients and employees to join their new firm. In addition, Wachovia sought a permanent injunction, the return of records, and an award of costs and attorneys' fees associated with the arbitration. It repeated these requests in its amended Statement of Claim filed on July 23, 2008.

The Former Employees' Answer described this dispute as "meritless" and an effort "to punish former [A.G. Edwards] employees for leaving in the wake of Wachovia's acquisition of A.G. Edwards, to intimidate and deter its current employees from making similar decisions, to prevent customers from obtaining information necessary to make an informed decision as to whether the customer wishes to do business, and to otherwise stifle legitimate competition." J.A. 460. The Former Employees requested that the Panel award them attorneys' fees and costs incurred in defending themselves "from Wachovia's baseless and unwarranted claims." J.A. 461. They also asserted counterclaims under the South Carolina Wage Payment Act ("Wage Act"), codified at S.C. Code Ann. § 41-10-80, and the common law doctrines of unjust enrichment and conversion. They did not assert any claims under the FCPA.

The arbitration proceeded before a panel of three arbitrators in accordance with FINRA's rules for "industry disputes." *See* FINRA R. 13000. The first month of arbitration proceedings, during which both sides presented evidence, was unremarkable. Then, on October 22, 2009, the panel asked the parties to submit accountings or proposals regarding requested attorneys' fees, forum fees, expert fees and any costs or expenses during the final two days of hearings, scheduled for November 23 and 24, 2009. Wachovia requested that the parties brief the fees issues and the Panel agreed, asking that the parties submit their briefs by November 23. There was no discussion of response briefs.

Despite the deadline, Wachovia was unprepared to submit its brief on fees on November 23, 2009 and requested a one-day extension.[4] The Panel permitted the extension, and the parties therefore submitted their briefs on November 24, 2009, the last planned day of hearings. Both parties' briefs contained new arguments regarding attorneys' fees. Wachovia argued, despite its own request for attorneys' fees in its Statement of Claim, that under the South Carolina Arbitration Act, neither party was entitled to attorneys' fees. The Former Employees argued for the first time that they were entitled to attorneys' fees under the FCPA.

As its name suggests, the Frivolous Civil Proceeding Act provides a mechanism for litigants to seek sanctions against attorneys who file frivolous claims. It contains a number of procedural safeguards for litigants facing sanctions. Significantly for our purposes, the statute provides for a notice period affording the accused 30 days to respond to a request for sanctions and a separate hearing on sanctions after the ver-

---

[4]The record suggests that such last-minute tactics were not atypical of Wachovia's behavior throughout this dispute. For example, when seeking a preliminary injunction in anticipation of the arbitration, Wachovia told the district court that it had a DVD of surveillance footage showing the Former Employees transferring Wachovia materials from their offices at Wachovia to their offices at Stifel. This DVD was not part of the record, however, because Wachovia claimed to have received it on the day of the hearing on the preliminary injunction. Nonetheless, the district court admitted the DVD into the record along with Wachovia's statement about what the DVD showed. *Wachovia Sec., LLC v. Brand*, No. 4:08-cv-2349, 2010 U.S. Dist. LEXIS 88505, at *4 (D.S.C. Aug. 26, 2010). As a result of Wachovia's late acquisition of this DVD, the Former Employees did not have a chance to review it before the preliminary injunction hearing. Appellee's Br. 3. More troubling, Wachovia later admitted that its description of the video—the statement on which the district court relied before issuing the injunction—was inaccurate and that the attorney who submitted the DVD had not watched it herself. Wachovia now concedes that the DVD shows only the Former Employees removing boxes from its offices, not ferrying information from Wachovia to Stifel. *Brand*, 2010 U.S. Dist. LEXIS 88505, at *50.

dict. S.C. Code 15-36-10(C)(1). No such procedures were followed here.

Upon learning that the Former Employees were seeking sanctions under the FCPA, Wachovia expressed concern that the arbitrators were not affording them 30 days' response time or a post-verdict hearing on the issue of fees. Toward the end of the hearing on November 24, the chairman of the Panel asked Wachovia if "you have been given a fair opportunity to present your case in its entirety in these proceedings." J.A. 201. Wachovia responded that it had not been given a fair opportunity with respect to "the issues raised and argued as to attorneys' fees." J.A. 201-02. The Panel then asked whether additional briefing would cure the concerns. Wachovia replied:

> I don't know. Because the standard and the [FCPA] from what I saw, there's notice and opportunity to be heard. So that means in other words, we need some evidence. That's why I don't think it's appropriate at the end, after our record is closed, that new issues have been injected. The statute is not referred to in the pleadings. So it's not just the element of surprise. It's a complete surprise.

J.A. 202-B.

After listening to Wachovia's objections to the Panel reaching any decision on the issue of attorneys' fees, the Panel stated: "The issue on attorneys' fees, I'm sure there will be something that will occur to the panel where we need to seek clarification from parties. And if that becomes necessary, be assured we will be in touch with you." J.A. 203-B. The Panel subsequently asked the parties for an accounting of their November fees but did not hold any additional hearings or request additional briefing. Nor, however, did Wachovia request additional briefing.

On December 18, 2009, the Panel issued an award in which it denied all of Wachovia's claims. It awarded the Former Employees $15,080.67 in treble damages on their Wage Act claims, as well as $1,111,553.85 for attorneys' fees under the FCPA. Although the Former Employees had also sought attorneys' fees under several South Carolina statutes, the Panel awarded them fees only under the FCPA and indicated that "any and all claims not specifically addressed herein" were denied. J.A. 86.

## B.

Following arbitration, the Former Employees filed a motion to confirm the Panel's award in the District of South Carolina. Wachovia filed its own motion to vacate that portion of the Panel's award granting relief to the Former Employees on January 19, 2010. It argued for vacatur on two grounds. First, it contended that the Panel exceeded its authority and manifestly disregarded the law under 9 U.S.C. § 10(a)(4) by awarding sanctions under the FCPA, for, inter alia, ignoring the FCPA's conditions precedent. To further support its argument that the Panel violated § 10(a)(4), Wachovia argued that the FCPA authorized a "court" to award fees after a "verdict" in a "trial" and was therefore inapplicable in arbitration proceedings since there is no "court" or "trial." Second, it contended that the Panel "deprived Wachovia of a fundamentally fair hearing, by denying [it] the procedural safeguards guaranteed by the FCPA and by not allowing [it] to review (much less rebut) critical evidence that [the Former Employees] submitted to the Panel in support of their fee claim." J.A. 94. Wachovia claimed that this denial provided grounds for vacatur under § 10(a)(3). The district court considered these claims in turn.

The district court began by rejecting Wachovia's argument that the arbitrators violated § 10(a)(4), which allows a district court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that

a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). It reasoned that arbitrators violate this provision when they decide issues not properly before them. Since the record supported the conclusion that the question of fees was properly before the Panel, the district court held that they had not violated § 10(a)(4).

The district court also disagreed with Wachovia's argument that a statute must mention arbitration in order to be applicable in arbitration. It further rejected Wachovia's claim that the language of the FCPA supported vacatur under a manifest disregard standard because the statute only applied to "courts" following a "verdict." It reasoned that Wachovia had not shown that the arbitrators understood the law as having a meaning that they chose to ignore.

Turning to Wachovia's claim that the Panel was "guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party [had] been prejudiced" in violation of § 10(a)(3), the court noted that any deficiencies in the hearing were of Wachovia's own creation since it missed the deadline for filing its brief and declined the Panel's offer to consider additional briefing. Wachovia appealed.

## II.

Wachovia appeals the district court's holding that the arbitrators neither violated § 10(a)(3) nor that they manifestly disregarded the law. Wachovia has not made any claims directly under § 10(a)(4) in this appeal, but instead argues that manifest disregard is a "judicial gloss" on §§ 10(a)(3) and (4).

We begin our examination of Wachovia's claims by first looking at the narrow standard of review that guides our analysis. Next, we consider Wachovia's contention that § 10(a)(3) requires that we overturn the award. Finding that the plain

language of the statute offers Wachovia no relief, we then turn to its argument that it is entitled to vacatur because the arbitrators "manifestly disregarded" the law. We reject that contention as well.

## A.

On appeal from a district court's denial of vacatur, "we review de novo the court's legal rulings." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (citing *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)). "Any factual findings made by the district court in affirming such an award are reviewed for clear error." *Id.* (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145 (4th Cir. 1993)). We note that judicial review of an arbitration award in federal court "is severely circumscribed." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998). "A court sits to 'determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it.'" *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir 2000) (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)).

## B.

Turning now to Wachovia's argument that § 10(a)(3) requires vacatur, we begin by noting that the FAA limits courts' ability to vacate arbitral awards as part of its comprehensive scheme to replace judicial hostility to arbitration with a national policy favoring it. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).[5] We are, therefore, hesitant to

---

[5]The FAA notably does not authorize a district court to overturn an arbitral award just because it believes, however strongly, that the arbitrators misinterpreted the applicable law. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). When parties consent to arbitration,

read any of § 10's grounds for vacatur too broadly. By its terms, § 10(a)(3) allows courts to vacate arbitration awards only "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

In this appeal, Wachovia argues that the Panel was "guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence" in violation of § 10(a)(3) when it failed to hold a separate hearing on the issue of attorneys' fees. Wachovia complains that the FCPA provides for certain procedural safeguards, which the Panel did not follow, and that it was denied the opportunity to present evidence on this issue. This argument fails for several reasons.

First, Wachovia has cited no authority for the proposition that state procedural requirements must be imported into arbitration. In *International Union Mine Workers v. Marrowbone Development Co.*, 232 F.3d 383, 389 (4th Cir. 2000), we said that "[a]n arbitrator typically retains broad discretion over procedural matters and does not have to hear every piece of evidence that the parties wish to present." Wachovia argues that it was entitled to 30 days to respond after the Former Employees requested FCPA sanctions on November 24, 2009, and that the Panel should have scheduled a hearing at which it could present evidence about attorneys' fees. In short,

---

and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way with which they disagree. *Cf. Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (explaining that arbitration is an alternative to litigation); *Safeway Stores v. Am. Bakery & Confectionery Workers*, 390 F.2d 79, 84 (5th Cir. 1968) ("The arbiter was chosen to be the Judge. That Judge has spoken. There it ends."). Any more probing review of arbitral awards would risk changing arbitration from an efficient alternative to litigation into a vehicle for protracting disputes.

Wachovia argues that the Panel must comply with the FCPA's procedural provisions if it relies on the FCPA's substantive provisions when awarding attorneys' fees. In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), which held that the FAA preempted a California rule holding that any contract that disallowed class proceedings was unconscionable, the Supreme Court explained that "the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id*. at 1749. Parties may, of course, consent to particular procedures in arbitration, but it is inconsistent with the FAA for one party to demand ex post particular procedural requirements from state law. *Id*. at 1750. We similarly conclude that the Panel was not compelled to follow the FCPA's procedural mandates insofar as Wachovia attempts to import them into this arbitration.

Second, even if we were to hold that FCPA procedures do apply in arbitration, Wachovia's challenge to the Panel's procedure would nevertheless fail because it does not allege misconduct. In *Marrowbone*, this court held that "an arbitrator's procedural ruling may not be overturned unless it was in bad faith or so gross as to amount to affirmative misconduct." 232 F.3d at 390 (quotation marks omitted). This ruling closely tracks the plain language of § 10(a)(3), which authorizes vacatur "where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence . . .; or of any other misbehavior by which the rights of any party have been prejudiced." In the context of § 10(a)(3), "misconduct" and "misbehavior" are different from "mistake." The former two imply that the arbitrators intentionally contradicted the law. Wachovia has not argued any such intentionality. Instead, it argues that the arbitrators made a mistake in how they handled the Former Employees' FCPA claim. Mistakes lack the requisite intentionality to fall within § 10(a)(3)'s reach. Because Wachovia did not allege intentional misconduct, § 10(a)(3) offers it no relief.

Wachovia attempts to get around this deficiency in its reliance on § 10(a)(3) by pointing to our decision in *Marrow-*

*bone*, in which we said that "courts owe no deference to an arbitrator who has failed to provide the parties with a full and fair hearing." 232 F.3d at 388. We interpreted *Marrowbone* and § 10(a)(3) in *Three S Delaware*, where we said "a federal court is entitled to vacate an arbitration award only if the arbitrator's refusal to hear pertinent and material evidence deprives a party to the proceeding of a fundamentally fair hearing." 492 F.3d at 531. Wachovia argues that the Panel's refusal to schedule another day of hearings at which it could present evidence on the question of attorneys' fees deprived it of a fundamentally fair hearing. We disagree.

To the contrary, we find that Wachovia is the architect of its own misfortune. Wachovia, not the arbitrators, cut short the hearing on the issue of attorneys' fees. The arbitrators set the deadline for submitting briefs on the issue of attorneys' fees for the penultimate day of hearings. Wachovia inexplicably missed this deadline and submitted its brief on the final day of arbitration, thereby leaving no time for the parties to debate the issue. Moreover, after Wachovia complained that it had not received a fair hearing on the issue of fees, the arbitrators asked Wachovia if it wanted to submit additional briefs. Wachovia turned down this opportunity. Even if Wachovia is correct in its contention that the FCPA requires a hearing in the context of arbitration, it could have used the additional briefing to explain why a hearing was necessary.

As noted above, arbitrators have broad discretion to set applicable procedure. *See Marrowbone*, 232 F.3d at 388. Accordingly, we will not overturn an award for violating § 10(a)(3)'s protection against "any other misbehavior by which the rights of any party have been prejudiced" where the arbitrators attempted to address one party's unhappiness with the fairness of the hearing and that party refused to take advantage of the opportunity provided.

## C.

We turn now to Wachovia's argument that it is entitled to vacatur under a "manifest disregard" standard. Specifically,

Wachovia argues that the Panel "manifestly disregarded" the law when it refused to import the FCPA's procedural requirements into the arbitration. "Manifest disregard" is, as we will explain, an old yet enigmatic ground for overturning arbitral awards. Wachovia contends the Supreme Court's 2008 decision in *Hall Street* rendered "manifest disregard" a judicial gloss on §§ 10(a)(3) and (4)—rather than a separate common law ground for relief—perhaps hoping that this "gloss" would help it where the text of the statute offers little relief. We do not find Wachovia's argument persuasive.

To lay a foundation for our analysis, we look first at "manifest disregard" as a basis for vacatur and our interpretation of the doctrine pre-*Hall Street*. We then consider how the Supreme Court's decisions in *Hall Street* and, more recently, *Stolt-Nielsen v. AnimalFeeds*, 130 S. Ct. 1758 (2010), have affected this analysis. Although we find that manifest disregard did survive *Hall Street* as an independent ground for vacatur, we conclude that Wachovia has not demonstrated that the arbitrators manifestly disregarded the law here.

1.

The origins of modern manifest disregard as an independent basis for reviewing American arbitration decisions likely lie in dicta from the Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427 (1953). In *Wilko*, the Court explained that when interpreting the agreements at issue, "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Id*. at 456. We have read *Wilko* as endorsing manifest disregard as a common law ground for vacatur, separate and distinct from § 10's statutory grounds.[6]

---

[6]Pre-*Hall Street*, most other circuits agreed. *See e.g.*, *Cytyc Corp. v. Deka Prods. Ltd.*, 439 F.3d 27, 33 (1st Cir. 2006)(describing "manifest disregard" as a "second set of exceptions [that] flow from the federal courts' inherent power to vacate arbitral awards"); *Collins v. D.R. Horton,*

*Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). Before *Hall Street*, we stated that for a court to vacate an award under the manifest disregard theory, the arbitration record must show that "'(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle.'" *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349-50 (4th Cir. 2006) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). We note that under this standard, proving manifest disregard required something beyond showing that the arbitrators misconstrued the law, especially given that arbitrators are not required to explain their reasoning.

## 2.

The Supreme Court's decision in *Hall Street* has been widely viewed as injecting uncertainty into the status of manifest disregard as a basis for vacatur. There, a commercial landlord and tenant had contracted for greater judicial review of any arbitral award during a dispute about the tenant's

---

*Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) ("Although § 10 does not sanction judicial review of the merits of arbitration awards, we have adopted a narrow 'manifest disregard of the law' exception under which a procedurally proper arbitration award may be vacated."); *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001) ("In addition to the limited statutory grounds on which an arbitration award may be vacated, arbitration awards can be vacated only if they are in manifest disregard of the law." (internal quotation marks omitted)).

The Seventh Circuit alone took a more limited approach to manifest disregard. In *Wise v. Wachovia Securities, LLC*, 450 F.3d 265 (7th Cir. 2006), the Seventh Circuit explained that "although courts will also set aside arbitration awards that are in manifest disregard of the law, and this is often described as a nonstatutory ground, we have defined 'manifest disregard of the law' so narrowly that it fits comfortably under the first clause of the fourth statutory ground—'where the arbitrators exceeded their powers.'" *Id.* at 268 (citations omitted). This approach rejected the notion that "manifest disregard" was a common law ground for vacatur.

alleged failure to comply with applicable environmental laws. The Supreme Court concluded that, by permitting review for legal errors, this contract impermissibly circumvented the FAA's limited review for procedural errors. *Hall Street*, 552 U.S. at 586-87. The Court rejected this approach and held that the FAA prohibited parties from contractually expanding judicial review on the theory that the grounds for vacatur in the FAA are "exclusive." *Id.* This circuit has not yet interpreted manifest disregard in light of *Hall Street*, although it has acknowledged the uncertainty surrounding the "continuing viability of extra-statutory grounds for vacating arbitration awards." *Raymond James Fin. Servs. v. Bishop*, 596 F.3d 183, 193 n.13 (4th Cir. 2010); *see also MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010).[7]

We find that the Supreme Court's more recent decision in *Stolt-Nielsen* sheds further light on the operation of "manifest

---

[7]Our sister circuits have split into three camps about the meaning of the word "exclusive" in *Hall Street*. The Fifth and Eleventh Circuits have read *Hall Street* as holding that the common law standards are no longer valid grounds for vacatur because the FAA's grounds are exclusive. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009); *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1323-24 (11th Cir. 2010). Similarly, the First Circuit has noted in dicta that *Hall Street* held that manifest disregard was not a valid ground for vacating or modifying an arbitral award in cases brought under the FAA. *Ramos-Santiago v. UPS*, 524 F.3d 120, 124 n.3 (1st Cir. 2008). The Second and Ninth Circuits have held that since *Hall Street*, manifest disregard exists as a shorthand or judicial gloss for §§ 10(a)(3) and (4). *See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93-94 (2d Cir. 2008), *rev'd on other grounds* by *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009). The Sixth Circuit, in an unpublished opinion, has read *Hall Street* narrowly and found that it only prohibited private parties from contracting for greater judicial review. *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 419 (6th Cir. 2008). It reasoned that "[i]n light of the Supreme Court's hesitation to reject the "manifest disregard" doctrine in all circumstances, we believe it would be imprudent to cease employing such a universally recognized principle," then applied the manifest disregard standard. *Id.* at 419.

disregard" post-*Hall Street*. In *Stolt-Nielsen*, a raw-ingredient supplier began arbitration proceedings against a parcel tanker company when it learned that the Department of Justice was investigating the company for illegal price-fixing. 130 S. Ct. at 1765. The arbitration clause in the parties' agreement was silent as to whether class arbitration was allowed, so the arbitrators heard evidence, "including testimony from petitioners' experts regarding arbitration customs and usage in the maritime trade," and looked to the Supreme Court's previous decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), to determine whether the arbitration agreement permitted class arbitration. *Id.* at 1766. The arbitrators eventually permitted class arbitration based on *Bazzle* and without making a determination regarding which of the potentially applicable bodies of law—the FAA, federal maritime law, or New York law—applied. *Id.* The district court vacated the award for manifest disregard, reasoning that the arbitrators "failed to make any meaningful choice-of-law analysis." *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 435 F. Supp. 2d 382, 385 (S.D.N.Y. 2006). The Second Circuit reversed, finding that although manifest disregard survived as a "judicial gloss" of the FAA after *Hall Street*, it was inapplicable because the arbitrators had not cited authority contrary to the position that they adopted. *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 97-98 (2d Cir. 2008).

The Supreme Court reversed the Second Circuit, finding that the arbitrators had improperly rested their decision on AnimalFeeds' public policy arguments. 130 S. Ct. at 1768. It reasoned that "because the parties agreed their agreement was 'silent' in the sense that they had not reached any agreement on the issue of class arbitration, the arbitrator's proper task was to identify the rule of law that govern[ed]." *Id.* It then criticized the panel for "proceed[ing] as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." *Id.* at 1769. The Court explained that the panel "exceeded its powers" when it failed to apply "a rule of decision derived from the FAA or either

maritime or New York law" and instead "imposed its own policy choice." *Id.* at 1770.

The Supreme Court's reasoning in *Stolt-Nielsen* closely tracked the majority of circuits' approach to manifest disregard before *Hall Street*: it noted that there was law clearly on point, that the panel did not apply the applicable law, and that the panel acknowledged that it was departing from the applicable law. Nonetheless, the Court said,

> We do not decide whether "manifest disregard" survives our decision in *Hall Street Associates*, as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10. AnimalFeeds characterizes that standard as requiring a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it. Assuming, *arguendo*, that such a standard applies, we find it satisfied.

*Id.* at 1768, n.3 (citations and quotation marks omitted). We read this footnote to mean that manifest disregard continues to exist either "as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." Therefore, we decline to adopt the position of the Fifth and Eleventh Circuits that manifest disregard no longer exists.

3.

Although we find that manifest disregard continues to exist as either an independent ground for review or as a judicial gloss, we need not decide which of the two it is because Wachovia's claim fails under both. Wachovia argues that the Panel acknowledged that it was applying the substantive provisions of the FCPA but did not follow the statute's proce-

dural provisions when it declined to give Wachovia 30 days to respond to the request for fees or hold a separate hearing on the issue of fees. However, as discussed above, we find that the Panel was not compelled to import these procedural requirements if it found a different procedure to be better suited to the needs of the arbitration. In *Long John Silver's*, we adopted a two-part test that a party must meet in order for a reviewing court to vacate for manifest disregard: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." 514 F.3d at 349 (quotation marks omitted). We do not read *Hall Street* or *Stolt-Nielsen* as loosening the carefully circumscribed standard that we had previously articulated for manifest disregard. Whether manifest disregard is a "judicial gloss" or an independent ground for vacatur, it is not an invitation to review the merits of the underlying arbitration. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Therefore, we see no reason to depart from our two-part test which has for decades guaranteed that review for manifest disregard not grow into the kind of probing merits review that would undermine the efficiency of arbitration. In this case, we find that whether the Panel erred by not applying the FCPA's procedural requirements is a question that was itself not clearly defined and was certainly subject to debate. Accordingly, we cannot hold that the arbitrators manifestly disregarded the law when they awarded Appellees $1.1 million in attorneys' fees and costs under the FCPA.

### III.

For the foregoing reasons, the decision of the district court is

*AFFIRMED*.