**PAINEWEBBER, INCORPORATED,**
Appellant,

v.

**Frank L. AGRON, Appellee.**

No. 94–2080.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1994.

Filed March 1, 1995.

---

John M. Edgar, Kansas City, MO, argued (John W. Shaw and Matthew V. Bartle, Kansas City, MO, and Joel E. Davidson, Weekawken, NJ, on the brief), for appellant.

Paul G. Schepers, Kansas City, MO, argued (Gordon D. Gee and Rachel H. Baker, Kansas City, MO, on the brief), for appellee.

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

PaineWebber appeals from the district court's[1] denial of its motion to vacate and grant of Frank Agron's motion to confirm an arbitration panel ruling that PaineWebber improperly fired Agron for signing a client's name to an account transfer form. We affirm.

## I.

In early 1989, Agron began working for PaineWebber in Kansas as a vice-president and registered representative. As part of his compensation package, Agron executed a promissory note whereby PaineWebber lent him $100,933. One-third of the principal amount due on the note was to be forgiven for each of Agron's first three expected years of employment. The terms of the note provided that it could be called due if, at any time prior to its total forgiveness, Agron was terminated for cause. Cause was defined in the note to include, among other things, dishonesty, violation of the rules of any association of which PaineWebber was a member, and violation of PaineWebber policy.

On February 13, 1990, PaineWebber fired Agron for signing a customer's name to an IRA account transfer form and attempting to pass it off as an original. Agron traced the customer's name to make it look as if the customer had signed the form himself and then placed the form in channels for transfer. The client verbally consented to Agron's signing the form because earlier attempts to transfer the account had gone awry. Nevertheless, Agron's actions contravened PaineWebber and National Association of Security Dealers ("NASD") rules.

PaineWebber's sales practices manual provides that "no employee may sign a client's name to *any* document" (emphasis in original) whether authorized or not. Supervisors had previously warned Agron that discharge was a possible consequence of such conduct. When confronted with the allegation of his impropriety, Agron initially denied any wrongdoing. He was then immediately terminated, and PaineWebber froze his personal accounts for the $77,890.67 remaining due on the note.

The NASD subsequently reviewed Agron's actions and issued him a "letter of caution," which stated that signing a customer's name to an account without written authorization was a violation of NASD rules. This investigation found mitigation in the client's consent. Agron then filed an arbitration statement of claim with the NASD seeking damages from PaineWebber and cancellation of the note. Agron did not seek reinstatement with PaineWebber.

After four days of hearings, the arbitration panel unanimously found that PaineWebber's termination of Agron and seizure of his accounts was improper; it also found that PaineWebber had unjustly interfered with Agron's business after his discharge. The panel ordered PaineWebber to free Agron's accounts, pay him $50,000 in actual damages

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

for debiting his accounts, release him from liability on the note, and pay an additional $240,000 in satisfaction of Agron's claims. NASD Arb. No. 91–01408 at 3–4 (May 26, 1993). The district court subsequently denied PaineWebber's motion to vacate the award as either contrary to public policy or as in manifest disregard of Kansas' employment law and confirmed the award pursuant to section 9 of the Federal Arbitration Act, 9 U.S.C. § 9.

## II.

### A.

We review *de novo* the district court's confirmation of the arbitration award.[2] Because of the need for proper deference to alternative means of dispute resolution, we can overturn an arbitration award that is challenged on policy grounds only if it is contrary to a "well-defined and dominant" policy embodied in laws and judicial precedent. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 44, 108 S.Ct. 364, 374, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). We are not entitled to merely substitute our judgment for that of the arbitration panel, no matter how wrong we may believe the panel's decision to be. *See Delta Air Lines v. Air Line Pilots' Ass'n Int'l*, 861 F.2d 665, 670 (11th Cir.1988) (even "poorly reasoned" and "foolish" decisions "may not be subject to court interference"), *cert. denied*, 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). In this limited review we accept the facts found by the arbitration panel, but review its conclusions *de novo* to determine if they violate public policy. *Iowa Elec. Light & Power Co. v. Local Union 204*, 834 F.2d 1424, 1427 (8th Cir.1987); *see Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F.2d 244, 248 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 441, 126 L.Ed.2d 375

(1993); *E.I. DuPont de Nemours v. Grasselli Indep. Ass'n*, 790 F.2d 611, 617 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).

Agron notes that most cases overturning arbitration decisions on policy grounds implicate safety-sensitive areas of the law with the potential to affect the public at large. *See, e.g., Union Pac. R.R. v. United Transp. Union*, 3 F.3d 255, 262 (8th Cir. 1993) (railroad safety), *cert. denied*, — U.S. —, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994); *Gulf Coast*, 991 F.2d at 253 (refinery safety); *Delta Air Lines*, 861 F.2d at 671 (airline safety); *Iowa Elec. Light*, 834 F.2d at 1428 (nuclear power safety). Although there may generally be a relation between the severity of the underlying conduct and the likelihood that an arbitration award relating to that conduct violates public policy, *see Iowa Elec. Light*, 834 F.2d at 1428–29, we cannot limit our policy inquiry to areas of public safety or any particular substantive area of the law. The extent of our inquiry is properly delineated by the "well-defined and dominant" policy framework laid down by the Supreme Court in *Misco* and *W.R. Grace*, not by the underlying conduct leading to the arbitration. *See Gulf Coast*, 991 F.2d at 250.

PaineWebber seeks to vacate the award as violative of a public "policy concerning employee honesty in matters of authenticity of customers' signatures," and honesty in the securities industry. As evidence of this policy, PaineWebber points to the NASD rules and its own internal policies in accord with those rules. *See* NASD Rules of Fair Practice, Article III, Section 1 (requiring "high standards of commercial honor and just and equitable principles of trade"); NASD Manual Uniform Practice Code, § 65(b) (account transfer procedure). Although internal rules and regulations are relevant to a determination whether there is a well-defined and dominant policy, *see Iowa Elec. Light*, 834 F.2d at 1428, we cannot

---

2. We recognize that the issue of the appropriate standard of review of a district court's denial of a motion to vacate an arbitration award is currently being reviewed by the Supreme Court. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1509 (3d Cir.) (applying *de novo* review while recognizing that the Eleventh Circuit re-

views such a denial for an abuse of discretion), *cert. granted*, — U.S. —, 115 S.Ct. 634, 130 L.Ed.2d 539 (1994). Our resolution of this case, however, does not turn on that determination because we would reach the same result under either standard on the facts presented before us.

accept such narrow guidance as a sole basis for adopting a policy argument.

■ Although it is easy to agree that there is a dominant policy requiring honesty in the securities industry, this policy is not so well-defined as it relates to the panel award at issue. Indeed, even though the need for ethical broker conduct "is firmly rooted in common sense," *Misco,* 484 U.S. at 44, 108 S.Ct. at 374, we are still not permitted to set aside the award in the absence of a well-defined and dominant policy ascertainable from "laws and legal precedents." *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183; *see Misco,* 484 U.S. at 43, 108 S.Ct. at 373. PaineWebber, while attempting to draw parallels between this case and others vacating arbitration awards, has failed to bring to our attention any such authority bearing on the precise issue of whether the arbitration ruling of no just cause for termination so clearly violates public policy as to warrant vacating the award. Having identified only a general policy relating to honest conduct and its own clearly defined internal rules as a reason for striking down the arbitration ruling, Paine-Webber's challenge must fail. To adopt this position would violate our mandate under *Misco* and *W.R. Grace.*

### B.

■ Even assuming that PaineWebber has identified a well-defined and dominant policy pertaining to honest conduct, it has not shown that this particular award violates that policy. PaineWebber claims that the ruling places it in an enforcement dilemma because PaineWebber must properly supervise its brokers or risk discipline by the NASD. *See* NASD Rule of Fair Practice, Section 27; 15 U.S.C. § 78s(h)(2). This argument, however, overlooks two institutional considerations. First, there is the fact that an NASD-sanctioned arbitration panel considered the evidence regarding Agron's conduct in accord with NASD arbitration procedures. Although Agron's conduct plainly violated PaineWebber and NASD rules, the panel heard four days of evidence and concluded that it did not justify termination. Contrary to PaineWebber's assertions, the arbitration panel did not determine the extent to which PaineWebber is obligated to enforce industry regulations. The panel merely found that, in light of all the relevant circumstances, Paine-Webber was not justified in terminating Agron. Second, the NASD itself conducted an independent review of Agron's conduct and found the infraction to warrant merely a letter warning because Agron had the consent of the client to expedite the transfer of his account in this manner. PaineWebber has no need to fear reprisal from the NASD when that body itself views the underlying infraction as relatively minor.

PaineWebber claims that the mitigating factor of consent should be given no credence because Agron signed the actual form in question twice, rather than just re-signing the client's name on the form, as he claimed. Thus, PaineWebber contends that Agron misled the NASD about the client's consent to that particular form. The record makes clear that the client wanted his account transferred and that he authorized Agron to sign the proper forms to that effect. The account had not yet been transferred to PaineWebber despite attempts to do so that related back to the previous March. The client had at one time signed the proper forms, but these were somehow lost in distribution. After eleven months of frustration, Agron received client authorization to take matters into his own hands. The NASD, while finding this behavior improper, did not find it to so besmirch the securities industry as to justify termination. *Cf. Stead Motors v. Automotive Machinists Lodge 1173,* 886 F.2d 1200, 1215 (9th Cir.1989) (en banc) (noting that specific regulatory action "might provide some form of ad hoc 'legal precedent'" for purposes of policy review), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990); *Iowa Elec. Light,* 834 F.2d at 1428 (regulatory body reprimanded employer and approved firing of employee for breach of safety rule). The fact that the client had not signed the particular piece of paper Agron sent through channels does not vitiate the NASD's recognition of the client's express consent in this instance.

We intimate no agreement with the arbitration panel's ruling. Indeed, the panel's seeming willingness to prevent PaineWebber

from strictly adhering to proper procedures and ethical considerations in policing its own brokers is troubling. Agron's actions were undeniably ill-conceived and in violation of PaineWebber and NASD rules. However, PaineWebber has identified no federal or state statutes, regulations, or judicial decisions that expose either Agron's conduct, or, most importantly, the arbitration ruling itself as violative of a fundamental policy. Given our limited review, we cannot supplant what we believe to be an improper decision without such a showing. *Misco,* 484 U.S. at 43, 108 S.Ct. at 373.

### C.

 PaineWebber also contends that the award must be vacated because it manifestly disregards Kansas' employment-at-will doctrine. This argument overlooks the very nature of this arbitration proceeding. Even accepting that Kansas is an employment-at-will state, and further assuming that we would be willing to apply a manifest disregard analysis, PaineWebber's relationship with Agron under the oversight of the NASD contemplated the use of the arbitration procedure as a means of settling employment-related disputes. This process necessarily alters the employment relationship from at-will to something else—some standard of discernable cause is inherently required in this context where an arbitration panel is called on to interpret the employment relationship. *See Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312–13 (7th Cir.1981); *see also Truck Drivers Local 705 v. Schneider Tank Lines,* 958 F.2d 171, 175 (7th Cir.1992) (arbitration clause implies just cause requirement); *Smith v. Kerrville Bus Co.,* 709 F.2d 914, 917–18 (5th Cir.1983) (arbitrators typically infer just cause requirement from arbitration procedure). If Agron's employment was purely at-will, the arbitration procedure designed to interpret that employment relationship would serve no identifiable purpose. Accordingly, the arbitration panel had the power to determine whether the firing was justified. PaineWebber has not shown that the arbitrators' power was expressly limited to application of the Kansas at-will doctrine by the terms of the employment agreement, promissory note, or any other factor. Rath-

er, PaineWebber merely contends that the panel's disposition improperly disregarded Kansas law. Accordingly, we are powerless to upset the award.

The judgment is affirmed.