**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 14-2160**

─────────────

LAVERNE JONES; STACEY JONES, f/k/a Stacey Ness; KERRY NESS,
Individually and on behalf of the Certified Class,

Plaintiffs - Appellants,

v.

BERNALDO DANCEL; AMERIX CORPORATION; 3C INCORPORATED;
CAREONE SERVICES, INCORPORATED; ASCEND ONE CORPORATION,

Defendants – Appellees.

-------------------------

CIVIL JUSTICE, INC.; PUBLIC JUSTICE CENTER, INC.; MARYLAND
CONSUMER RIGHTS COALITION, INC.,

Amici Supporting Appellants.

─────────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, Senior District
Judge.  (1:14-cv-02375-JFM)

─────────────

Argued: May 12, 2015                    Decided: July 6, 2015

─────────────

Before TRAXLER, Chief Judge, and GREGORY and KEENAN, Circuit
Judges.

─────────────

Affirmed by published opinion.  Judge Keenan wrote the opinion,
in which Chief Judge Traxler and Judge Gregory joined.

─────────────

**ARGUED**: G. Oliver Koppell, LAW OFFICES OF G. OLIVER KOPPELL & ASSOCIATES, New York, New York, for Appellants. Lawrence S. Greenwald, GORDON FEINBLATT LLC, Baltimore, Maryland, for Appellees. **ON BRIEF**: Peter A. Holland, THE HOLLAND LAW FIRM, P.C., Annapolis, Maryland; Gregory S. Duncan, LAW OFFICE OF GREGORY S. DUNCAN, Charlottesville, Virginia; Joseph S. Tusa, TUSA P.C., Southold, New York, for Appellants. Catherine A. Bledsoe, Brian L. Moffet, GORDON FEINBLATT LLC, Baltimore, Maryland, for Appellees. Joseph S. Mack, CIVIL JUSTICE, INC., Baltimore, Maryland, for Amici Curiae.

---

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in denying a motion to vacate certain aspects of an arbitration award. The subject of the parties' dispute involved various "credit repair" services provided to plaintiff consumers, for which some of the disclosure requirements of the Credit Repair Organizations Act (CROA, or the Act), 15 U.S.C. § 1679 et seq., were not met. The arbitrator awarded the plaintiffs only punitive damages for those violations, finding that the plaintiffs had failed to prove actual damages under the Act. The arbitrator also determined that the amounts of attorneys' fees and costs requested by the plaintiffs under CROA were unreasonable. The plaintiffs argue that in reaching these conclusions, the arbitrator manifestly disregarded the law and exceeded the scope of his authority under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq.

We hold that the district court did not err in declining to vacate the challenged portions of the arbitration award. Accordingly, we affirm the district court's judgment.


                              I.

Between 1998 and 2003, plaintiffs Laverne Jones, Stacey Jones, and Kerry Ness entered contracts to participate in debt management programs with a credit counseling agency, Genus

Credit Management Corporation (Genus). Under those contracts, among other things, the plaintiffs authorized Genus to seek reductions in the plaintiffs' debt owed to their creditors, and to withdraw various amounts from the plaintiffs' bank accounts for monthly payments to those creditors. The contracts each contained the following arbitration provision:

> Any dispute between us that cannot be amicably resolved, and all claims or controversies arising out of this Agreement, shall be settled solely and exclusively by binding arbitration in the City of Columbia, Maryland, administered by, and under the Commercial Arbitration Rules then prevailing of, the American Arbitration Association (it being expressly acknowledged that you will not participate in any class action lawsuit in connection with any such dispute, claim, or controversy, either as a representative plaintiff or as a member of a putative class), and judgment upon the award rendered by the arbitrator(s) may be entered and enforced in any court of competent jurisdiction.

Although Genus represented itself as a non-profit organization providing debt management services free of charge, Genus accepted "voluntary" contributions from the plaintiffs (voluntary contributions) as well as "voluntary contributions from [participating] creditors" (fair share payments). Genus contracted with other corporations, including Amerix Corporation (Amerix) and its affiliates, to perform critical functions such as marketing, enrollment, and payment processing services, and

4

paid those corporations significant portions of the voluntary contributions and fair share payments that Genus received.

In 2004, the plaintiffs jointly filed a class action complaint against Genus, Amerix, and several other defendants (collectively, the original defendants) in the United States District Court for the District of Maryland, alleging a conspiracy to commit violations of federal and state law. The district court dismissed the action, holding that the arbitration provisions in the plaintiffs' contracts required that the plaintiffs arbitrate their claims. See Jones v. Genus Credit Mgmt. Corp., 353 F. Supp. 2d 598, 602-03 (D. Md. 2005). The court later supplemented its decision, directing that an arbitrator first should decide whether any arbitration would involve class-wide claims or only individual claims asserted by the plaintiffs. See Genus Credit Mgmt. Corp. v. Jones, 2006 WL 905936, at *1 (D. Md. Apr. 6, 2006) (unpublished).

The plaintiffs accordingly initiated an arbitration action alleging individual and class claims against the original defendants, seeking damages in excess of $270 million on behalf of themselves and a nation-wide class of consumers.[1] By the time

_____

[1] In the district court, the original defendants filed a civil action in which they unsuccessfully challenged the arbitrator's determination "that, in the abstract, the arbitration between the Underlying Plaintiffs and the Underlying Defendants could proceed as a class arbitration." Amerix Corp. (Continued)

the arbitration had proceeded to a hearing on the merits of the plaintiffs' claims, the claims included alleged violations of: (1) CROA; (2) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; (3) the Maryland Consumer Protection Act (MCPA), Md. Code, Com. Law § 13-101 et seq.; (4) the Maryland Debt Management Services Act (MDMSA), Md. Code, Fin. Inst. § 12-901 et seq.; and (5) Maryland common law on matters of fraud and breach of fiduciary duty.

After discovery was completed, the arbitrator certified a nation-wide class of consumers only with regard to the plaintiffs' CROA and MCPA claims.[2] The district court confirmed the arbitrator's class certification, and we affirmed the district court's judgment on appeal. See Genus Credit Mgmt. Corp. v. Jones, No. 1:09-cv-01498-JFM (D. Md. Sept. 8, 2009), aff'd, Amerix Corp. v. Jones, 457 F. App'x 287 (4th Cir. Dec. 9, 2011) (unpublished per curiam). However, by the time of our

---

v. Jones, 457 F. App'x 287, 290 (4th Cir. Dec. 9, 2011); see Genus Credit Mgmt. Corp. v. Jones, No. 1:05-cv-03028-JFM (D. Md. Apr. 6, 2006). The defendants did not appeal the district court's dismissal of this civil action. See Amerix, 457 F. App'x at 290.

[2] Initially, the arbitrator also certified a class with respect to the plaintiffs' RICO and unjust enrichment claims. However, the arbitrator later decertified the class with respect to the RICO claims, and noted in his final award that the plaintiffs' unjust enrichment claims had been removed from the arbitration by the time of the final merits hearing.

6

decision in that appeal, some of the original defendants had entered into class-wide settlements with the plaintiffs. The arbitrator approved the plaintiffs' settlements with these original defendants and awarded more than $2.6 million in attorneys' fees, noting that the proceedings had been pending for over five years and that the work of plaintiffs' counsel had been "exemplary." Following the settlements, the defendants remaining in the case included Amerix, Amerix's founder Bernaldo Dancel (Dancel), and several of Amerix's affiliates.

After extensive hearings, the arbitrator issued an 80-page final arbitration award granting the plaintiffs only partial relief on their claims. The arbitrator rejected the plaintiffs' RICO and MCPA claims as well as the plaintiffs' other state law claims, including the alleged MDMSA violations, breaches of fiduciary duty, and common law fraud claims.

With respect to a subset of the plaintiffs' class and individual claims brought under CROA, the arbitrator found that the defendants were liable for certain statutory violations. In particular, the arbitrator concluded that the defendants were "credit repair organizations" within the meaning of CROA,[3] and

---

[3] The arbitrator found that defendants Amerix, Dancel, 3C Incorporated, and CareOne Services, Incorporated, constituted credit repair organizations because their "business of improving creditworthiness is an activity sufficiently close to the literal reading of CROA as to bring that business within its
(Continued)

that although the plaintiffs had not proved that the defendants violated the Act by making untrue or misleading statements[4] or by unlawfully billing consumers for debt management services,[5] the evidence nonetheless showed that the defendants had failed to make certain disclosures to consumers mandated under the Act.

Those disclosure provisions required that the defendants take particular action to inform consumers of their rights under federal and state law. See 15 U.S.C. § 1679c (requiring credit repair organizations to provide consumers with a document summarizing their right to accurate information in certain credit reports); § 1679d (requiring that any contract between a

_____

regulatory ambit." The arbitrator did not make any such finding regarding defendant Ascend One Corporation (Ascend One), given the arbitrator's earlier conclusion that Ascend One was not a successor to Amerix for liability purposes. Although we observe that this finding was not challenged on appeal, we continue to refer to the defendants in the collective sense for the purposes of this opinion.

[4] See 15 U.S.C. § 1679b(a)(3) (prohibiting the making or usage of "any untrue or misleading representation of the services of the credit repair organization").

[5] See 15 U.S.C. § 1679b(b) ("No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."). The plaintiffs urge that the arbitrator held that the defendants violated this subsection of the statute, but there is no support in the record for this assertion. Indeed, the arbitrator concluded that voluntary contributions were not amounts required for the exchange of credit repair services.

8

credit repair organization and a consumer contain specific terms and conditions of payment, a detailed description of the services to be performed, information identifying the credit repair organization, and a conspicuous statement regarding the consumer's right to cancel the contract); § 1679e(b) (requiring credit repair organizations to supply consumers with cancellation forms, as well as copies of completed contracts and any other signed documents). Although the arbitrator recognized that the defendants "did make a number of disclosures that either met some of the [statutory] requirements or came reasonably close to doing so," the arbitrator nevertheless concluded that "[a]lmost is not good enough," and that the defendants' violations "denied hundreds of thousands of consumers the information and options that should have been given to them under the disclosure requirements of CROA."

In determining the amount of compensatory damages to award the plaintiffs for the defendants' statutory violations, the arbitrator observed that the plaintiffs sought compensation only for the voluntary contributions of certain class members as damages under CROA's actual damages provision, 15 U.S.C. § 1679g(a)(1)(B). Under that statute, actual damages include "any amount paid by the person to the credit repair organization." 15 U.S.C. § 1679g(a)(1)(B).

The arbitrator interpreted this actual damages provision as contemplating payment from a consumer on a quid pro quo basis in return for a defined credit repair service. The arbitrator reasoned that this interpretation was consistent with use of the term "payment" elsewhere in the statute, as well as with general legal definitions of that term. Applying this interpretation, the arbitrator concluded that the plaintiffs' voluntary contributions were not "amount[s] paid" under Section 1679g(a)(1)(B), primarily because a significant percentage of class members did not make any voluntary contributions in exchange for credit repair services. Accordingly, the arbitrator declined to award any actual damages under CROA.

The arbitrator concluded, however, that the plaintiffs could recover for certain violations under CROA's punitive damages provision, 15 U.S.C. § 1679g(a)(2). Noting that defendants Amerix and Dancel did not observe CROA's disclosure requirements when they "should have perceived that CROA applied to their business," the arbitrator analyzed those defendants' financial data, their ability to pay a judgment, and the nature of their misconduct. Based on those factors, the arbitrator awarded the plaintiffs $1,948,264 in punitive damages, jointly

and severally against Amerix and Dancel.[6]  The arbitrator explained that in his view, this amount would "serve as a powerful deterrent," was "well within" the financial capabilities of Amerix and Dancel, and would not "put [them] out of business []or into bankruptcy."

Finally, the arbitrator considered the plaintiffs' request for several million dollars in attorneys' fees and costs.  This request was in addition to the fees of about $2.6 million already awarded in the case.  Although the arbitrator recognized that under CROA, defendants "shall be liable" to successful plaintiffs for "the costs of the action, together with reasonable attorneys' fees," 15 U.S.C. § 1679g(a)(3), the arbitrator found that the additional fee and cost requests were unreasonable.  The arbitrator explained that plaintiffs' counsel had failed to account separately for time spent on successful claims and time spent on unsuccessful claims.  The arbitrator also found that plaintiffs' counsel had failed to substantiate proposed lodestar billing rates, and had submitted time and expense entries that otherwise were "defective."

---

[6] After finding that it would be "neither practical nor required to distribute de minimis amounts" of the award of punitive damages to the 487,066 class members, the arbitrator ruled that those damages should be distributed in equal portions to two cy pres recipients, namely, the National Consumer Law Center and the National Association of Consumer Advocates.  In addition, the arbitrator granted incentive awards to the three class representatives.

Treating the attorneys' fees already received by plaintiffs' counsel from the prior settlements as "set-offs" against the amounts sought, the arbitrator concluded that any amounts payable for the items that were substantiated were exceeded by the greater amounts the attorneys already had received. Accordingly, the arbitrator declined to award additional attorneys' fees or costs.

The plaintiffs filed the present civil action in the district court, challenging the arbitrator's refusal to award actual damages and additional attorneys' fees and costs, and seeking to confirm the arbitrator's award of punitive damages. The district court held that based on the "limited" standard of review applicable to arbitration awards, as well as the "thoughtful and well-considered" nature of the arbitrator's conclusions, "there is absolutely no basis for overturning the arbitrator's decision." Accordingly, the court granted the plaintiffs' motion to confirm in part the arbitrator's final award, and denied the plaintiffs' motion to vacate in part the final award. The plaintiffs timely appealed the district court's denial of their motion to vacate.

II.

The plaintiffs argue that the district court committed reversible error by refusing to vacate the arbitrator's finding

that the plaintiffs failed to establish under CROA: (1) actual damages; or (2) a basis for additional attorneys' fees and costs. The plaintiffs assert that the arbitrator ignored or fundamentally misinterpreted the relevant provisions of the Act, thereby manifestly disregarding the law and exceeding his powers under Section 10(a)(4) of the FAA. We review de novo the district court's denial of a motion to vacate an arbitration award. Wachovia Sec., LLC v. Brand, 671 F.3d 472, 478 (4th Cir. 2012).

A.

We first examine the standard of review that applies to a district court's review of an arbitration award. In articulating this standard, we focus on the plaintiffs' argument that although judicial review of an arbitration award in federal court ordinarily is very limited, such a narrow focus is inappropriate here because the arbitrator's decision involved the resolution of statutory claims. We disagree with the plaintiffs' contention.

The FAA provides four grounds on which an arbitration award may be vacated. Those grounds are: (1) when the award was procured by corruption, fraud, or undue means; (2) when there was evident partiality or corruption on the part of an arbitrator; (3) when an arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown,

13

or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior causing prejudice to the rights of any party; or (4) when an arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10.

The Supreme Court explained in Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008), that under the FAA, a court "must" confirm an arbitration award "unless" a party to the arbitration demonstrates that the award should be vacated under one of the above four enumerated grounds.  Id. at 582. After the decision in Hall Street, we further have clarified that an arbitration award may be vacated when the arbitrator "manifestly disregards" the law.  Wachovia Sec., 671 F.3d at 483.

As a general matter, however, judicial review of an arbitration award in federal court is "severely circumscribed" and "among the narrowest known at law."  Id. at 478 (quotation omitted); Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 (4th Cir. 1998).  Such limited review is appropriate given the fact that the arbitral forum is designed to assist parties in avoiding much of the expense and delay that often is associated with litigation.  See Apex Plumbing Supply, 142 F.3d at 193.  Thus, we have emphasized that a district court

14

may not overturn an arbitration award "just because it believes, however strongly, that the arbitrators misinterpreted the applicable law." Wachovia Sec., 671 F.3d at 478 n.5 (citation omitted).

The plaintiffs argue, nevertheless, that these principles do not govern the present case because the arbitrator considered remedies created by statute, rather than rights established by contract. In support of their position, the plaintiffs rely on two Supreme Court decisions addressing the arbitration of federal statutory claims.

In the first of these decisions, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), the plaintiffs focus solely on the Court's statement that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id. at 26 (brackets, citation, and internal quotation marks omitted). Contrary to the plaintiffs' contention, however, this statement does not alter the standard for judicial review of an arbitration award involving statutory remedies, but simply emphasizes that such remedies are available in arbitration proceedings as well as in our courts. Thus, in Gilmer, the Court held that a claim under the Age Discrimination in Employment Act (ADEA) was subject to the parties' prior

15

agreement to arbitrate disputes arising out of a worker's employment, because arbitration was not precluded by the text, legislative history, or underlying purposes of the ADEA, and did not deprive the plaintiff of a fair opportunity to present his claim. Id. at 26-33.

The second decision cited by the plaintiffs, CompuCredit Corp. v. Greenwood, 132 S. Ct. 665 (2012), likewise fails to support the plaintiffs' argument for heightened judicial review of arbitration decisions involving statutory claims. In CompuCredit, the Court upheld an agreement compelling the arbitration of CROA claims, holding that although CROA prohibits the waiver of any right granted under the Act, CROA does not prevent parties from agreeing to arbitrate claims arising under its provisions.[7]  Id. at 669-73.

In contrast to the claimants in Gilmer and CompuCredit, the plaintiffs here do not dispute the enforceability of the

---

[7] We have reached similar conclusions with respect to the enforceability of arbitration agreements requiring the arbitration of federal statutory claims. See, e.g., In re Cotton Yarn Antitrust Litig., 505 F.3d 274 (4th Cir. 2007) (concluding that plaintiffs failed to meet their burden of showing that the no-joinder terms and one-year limitations periods of their arbitration agreements prevented them from vindicating their rights under antitrust laws); Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549 (4th Cir. 2001) (rejecting challenge to a fee-splitting provision in an agreement compelling arbitration of discrimination claims, reasoning that such a provision does not necessarily deprive claimants of an adequate forum in which to resolve their statutory rights).

arbitration provisions in their contracts, but seek heightened scrutiny of the arbitrator's decision.  Thus, the plaintiffs' argument fails because it is nothing more than an attempt to revive an argument squarely rejected in Gilmer, in which the Court explained that although a narrow standard of review applies to arbitrators' decisions regarding statutory claims, "such review is sufficient to ensure that arbitrators comply with the requirements of the statute at issue."  Id. at 32 n.4 (citation and internal quotation marks omitted).  Accordingly, in view of the Court's clear language rejecting the plaintiffs' position, we proceed to consider the merits of their appeal under the "extremely limited" standard of review that governs our analysis.  See Wachovia Sec., 671 F.3d at 478 n.5.

## B.

The plaintiffs argue that the district court erred by refusing to vacate the arbitration award on the ground that the arbitrator manifestly disregarded the law.  A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle.  Id. at 483.  Moreover, as we have observed, the manifest disregard standard is not an "invitation to review the merits of the underlying arbitration," id., or to establish that

17

the arbitrator "misconstrued" or "misinterpreted the applicable law."[8]  Id. at 478 n.5 & 481.

We conclude that the plaintiffs have failed to satisfy their burden of showing that the arbitrator manifestly disregarded the law.  The plaintiffs fall far short of meeting this burden because their argument, reduced to its essence, does nothing more than challenge the arbitrator's interpretation of applicable law.

In particular, the plaintiffs argue that the arbitrator manifestly disregarded the plain text of CROA's actual damages provision.  Under that provision, a person who has established that a credit repair organization is liable under the Act may recover "any amount paid by the person to the credit repair organization."  15 U.S.C. § 1679g(a)(1)(B).  The plaintiffs contend that Section 1679g(a)(1)(B) clearly includes certain forms of damages that the arbitrator concluded were beyond the

---

[8] We are not persuaded by amici curiae that we should revisit our standard for manifest disregard.  Amici cite Cole v. Burns International Security Services, 105 F.3d 1465 (D.C. Cir. 1997), in which the D.C. Circuit held that an arbitration agreement was enforceable, and stated that in cases involving "novel or difficult legal issues," courts may "review an arbitrator's award to ensure that its resolution of public law issues is correct."  Id. at 1487.  We have not adopted Cole, and discern no reason to do so here.  See Wachovia Sec., 671 F.3d at 483 (observing that our two-part test "has for decades guaranteed that review for manifest disregard not grow into the kind of probing merits review that would undermine the efficiency of arbitration").

18

scope of the statute, including the fair share payments remitted by participating creditors and the voluntary contributions made by certain plaintiffs. We disagree.

At the outset, we observe that at the final arbitration hearing, the plaintiffs abandoned the argument that they were entitled to receive fair share payments as actual damages.[9] Therefore, we consider only the arbitrator's determination that voluntary contributions did not constitute "amount[s] paid" under Section 1679g(a)(1)(B).

With respect to that determination, we cannot say that the arbitrator's interpretation fell beyond the scope of reasonable debate. The arbitrator construed the actual damages provision in the context of the statute as a whole, observing that another section of the Act defined a "credit repair organization" by referencing the sale, provision, or performance of credit repair

---

[9] We note, however, that even if the plaintiffs had preserved the argument, the arbitrator considered the competing arguments regarding whether the fair share payments qualified as actual damages under the Act. On the one hand, the arbitrator observed, those amounts were remitted by third-party creditors, and therefore may not qualify as amounts paid "by the person" under Section 1679g(a)(1)(B). On the other hand, the arbitrator noted that the amounts could be considered "indirect payments" by the consumer. The existence of reasonable debate on the subject undermines the plaintiffs' position that the applicability of CROA's actual damages provision was clearly defined.

19

services "in return for the payment of money or other valuable consideration."[10]  15 U.S.C. § 1679a(3).

Given the absence of binding precedent requiring a contrary result, we conclude that the arbitrator's determination, that "amount[s] paid" under the Act were limited to sums paid by the plaintiffs in return for the defendants' services, did not constitute a refusal to heed a clearly defined legal principle. Wachovia Sec., 671 F.3d at 483.  Although another arbitrator might have reached a different conclusion and found that the Act's actual damages provision covered all amounts paid, irrespective whether the payments were "required" for the exchange of credit repair services, it is not for us to pass judgment on the strength of the arbitrator's chosen rationale. See id. at 481.  Thus, we hold that the arbitrator did not

---

[10] The plaintiffs assert that the arbitrator's conclusion that the voluntary contributions did not constitute "amount[s] paid by the person" under 15 U.S.C. § 1679g(a)(1)(B) is "irrevocably inconsistent" with his earlier conclusion that the some of the defendants constituted credit repair organizations under 15 U.S.C. § 1679a(3), because those defendants rendered credit repair services "in return for the payment of money or other valuable consideration."  As the defendants point out, however, the plaintiffs' argument fails to appreciate that Section 1679g(a)(1)(B) operates only with respect to amounts paid "by the person," whereas Section 1679a(3) broadly defines a "credit repair organization" in terms of amounts paid by any person in exchange for credit repair services.

manifestly disregard the law by determining that the plaintiffs failed to prove actual damages under the Act.[11]

We next consider the plaintiffs' argument regarding their request for additional attorneys' fees and costs. According to the plaintiffs, the arbitrator's refusal to award the additional amounts requested violated CROA, which directs that a plaintiff recover "[i]n the case of any successful action to enforce any liability under [the actual damages or punitive damages provisions], the costs of the action, together with reasonable

---

[11] We also find no merit in the plaintiffs' other challenges to the arbitrator's refusal to award actual damages. First, the plaintiffs argue that the arbitrator ignored CROA and imposed his own "personal notions of right and wrong" by expressing concern for whether a damages award would "put [the defendants] out of business []or into bankruptcy." This argument misrepresents the arbitrator's statements regarding the financial status of two defendants, which statements were made exclusively in the context of measuring the extent of <u>punitive</u> damages. In considering the deterrent or punitive effect of punitive damages, it is well accepted that a court may consider a defendant's "ability to pay." <u>See, e.g.</u>, <u>Saunders v. B.B. & T. Co. of Va.</u>, 526 F.3d 142, 154-55 (4th Cir. 2008) (citing <u>TXO Prod. Corp. v. Alliance Res. Corp.</u>, 509 U.S. 443, 462 n.28 (1993) (plurality opinion)).

Second, the plaintiffs argue that in refusing to award actual damages under CROA, the arbitrator disregarded a Maryland statute providing that no person may require a voluntary contribution from consumers for debt management services. We observe, however, that the arbitrator found that the defendants did not require voluntary contributions from the plaintiffs. Moreover, we fail to see how an alleged violation of a state statute bears on the question whether the arbitrator manifestly disregarded the law when he refused to award actual damages under CROA, a federal statute.

21

attorneys' fees."   15 U.S.C. § 1679g(a)(3).   We disagree with the plaintiffs' argument.

As the arbitrator correctly observed, a plaintiff seeking to recover attorneys' fees under a fee-shifting statute bears the burden of demonstrating that the requested fees are reasonable.   See Fair Hous. Council of Greater Washington v. Landow, 999 F.2d 92, 97-98 (4th Cir. 1993).   We similarly have observed that a plaintiff seeking to recover costs is entitled to compensation only for "reasonable litigation expenses."   See Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986).

In the present case, the arbitrator found that the additional amounts of attorneys' fees and costs requested were unreasonable.   The arbitrator identified several serious deficiencies with the plaintiffs' fee request, including counsel's use of "block billing" practices, quotation of unjustified billing rates, and submission of time entries that failed to segregate successful claims from unsuccessful claims. The arbitrator also noted that plaintiffs' counsel submitted improper requests for questionable litigation expenses, including "bills from costly restaurants" and excessive travel and lodging costs.

In view of these circumstances, we conclude that the arbitrator did not refuse to heed any clearly defined legal principles.   Instead, the arbitrator correctly observed that

22

given the existence of such serious deficiencies, he had the authority to disallow the fee request in its entirety. See Fair Hous. Council, 999 F.2d at 97 (forbidding plaintiffs from submitting "a fee request which is merely an opening bid in the quest for an award"). Although he elected not to dismiss all the requested fees and costs in summary fashion, the arbitrator nevertheless effectively disallowed what he concluded were unreasonable attorneys' fees and costs, by significantly reducing the requested amounts and by "setting off" the attorneys' fees and costs that plaintiffs' counsel already had received from prior settlements.[12] While it may be debatable whether the arbitrator performed this task "well," the record in this case shows that the arbitrator undertook a careful analysis of the applicable legal principles and reached a decision supported by his interpretation of our precedent. Wachovia Sec., 671 F.3d at 478 n.5. Accordingly, we reject the

---

[12] The plaintiffs challenge the method by which the arbitrator performed the lodestar analysis under the Supreme Court's decision in Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552-53 (2010), as well as the extent to which the arbitrator explicitly considered the twelve factors adopted by this Court to determine the adequacy of awards of attorneys' fees in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). We find no basis to vacate the arbitration award, given that the arbitrator explicitly considered Perdue and appears to have incorporated the factors set forth in Barber in his analysis of the reasonableness of attorneys' billing rates and time expended on successful claims.

23

plaintiffs' various arguments regarding their request for additional attorneys' fees and costs.

C.

Finally, the plaintiffs advance an alternative argument that the arbitrator exceeded his powers under Section 10(a)(4) in his rulings on actual damages, attorneys' fees, and costs. We disagree.

By its terms, Section 10(a)(4) allows courts to vacate arbitration awards only when arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). As the Supreme Court recently observed in Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064 (2013), a plaintiff seeking relief under this provision bears the "heavy burden" of showing that the arbitrator acted outside the scope of the authority granted by the parties in their contract, by "issuing an award that simply reflects his own notions of economic justice." Id. at 2068 (citations, brackets, and internal quotation marks omitted).

Here, the plaintiffs do not argue that the arbitrator failed to observe any limitations on his authority imposed by the relevant arbitration provisions in the parties' contracts. Instead, the plaintiffs merely restate a theory that we already have rejected, namely, that the arbitrator misinterpreted

24

various legal principles. Moreover, as we already have discussed, the plaintiffs have misrepresented the record by characterizing the arbitrator's analysis of appropriate punitive damages as reflecting the arbitrator's "notions of economic justice." Id. (citation and brackets omitted); see supra note 11. Because the arbitrator interpreted the parties' arbitration provision and the applicable legal authorities in rendering the award in the present case, we hold that the arbitrator did not exceed the scope of his contractually delegated authority under Section 10(a)(4) of the FAA.[13]

III.

For these reasons, we affirm the district court's judgment.

AFFIRMED

---

[13] We find no merit in the plaintiffs' separate assertion that the length and form of the district court's written order shows that the court failed to perform sufficient judicial review of the arbitrator's final award. Indeed, we conclude that the district court's order properly observed that judicial review of arbitration decisions was "limited," that the arbitrator's decision in this case was "thoughtful and well-considered," and that there was "no basis for overturning that decision."