**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———

**No. 20-1690**

———

JAMES WARFIELD,

        Plaintiff – Appellant,

   v.

ICON ADVISERS, INC; ICON DISTRIBUTORS, INC.,

        Defendants – Appellees.

———

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:20-cv-00195-GCM)

———

Argued:  January 26, 2022               Decided:  February 24, 2022

———

Before MOTZ, THACKER, and QUATTLEBAUM, Circuit Judges.

———

Reversed by published opinion.  Judge Motz wrote the opinion, in which Judge Thacker and Judge Quattlebaum joined.

———

**ARGUED:**  Christopher S. Edwards, WARD & SMITH, PA, Wilmington, North Carolina, for Appellant.  Jonathan Woodward Yarbrough, CONSTANGY, BROOKS, SMITH & PROPHETE LLP, Asheville, North Carolina, for Appellee. **ON BRIEF:**  Gary J. Rickner, WARD & SMITH, PA, Raleigh, North Carolina, for Appellant.

———

DIANA GRIBBON MOTZ, Circuit Judge:

James Warfield, a securities broker, contended before an arbitration panel that his former employer, ICON Advisers, Inc., and a related corporation, ICON Distributors, Inc., (together, "ICON") wrongfully terminated him without just cause. The panel awarded him $1,186,975. Warfield moved to enforce the award in the Western District of North Carolina. ICON cross-moved to vacate the award. The district court refused to enforce the award, holding that North Carolina is an "at-will" employment state that does not recognize a cause of action for wrongful termination without just cause. The court determined that the arbitrators manifestly disregarded the law in finding to the contrary and vacated the award on that basis. Warfield appeals, and because ICON has not made the exceedingly difficult showing necessary to demonstrate that the arbitrators acted with manifest disregard of the law, we must reverse the district court's order.

I.

In April 2017, ICON hired Warfield as a securities wholesaler. By the end of the year, it had fired him. The parties dispute exactly why ICON terminated Warfield's employment. They agree, however, that because Warfield's employment fell within the ambit of the Financial Industry Regulatory Authority (FINRA), arbitrators would resolve the dispute. *See* FINRA Rule 13200(a).

In April 2019, Warfield filed a statement of claim before the arbitrators asserting a claim against ICON for "wrongful termination without just cause."[1] Warfield argued that

___

[1] Warfield also sought relief under defamation and state law unfair and deceptive trade practices theories. Those claims are not at issue in this appeal.

2

the mere fact that disputes over his employment relationship had to be resolved by arbitration implied that he could only be fired for cause. He cited two opinions from our sister circuits for this proposition: *Paine Webber, Inc. v. Agron*, 49 F.3d 347 (8th Cir. 1995) and *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310 (7th Cir. 1981). For its part, ICON argued that because North Carolina is an employment at-will state, Warfield could not recover for "wrongful termination" without just cause.[2]

The arbitrators agreed with Warfield. They concluded: "Respondents [ICON] are jointly and severally liable for and shall pay to Claimant [Warfield] the amount of $1,186,975.00 in compensatory damages for wrongful termination without just cause." The arbitrators' decision contains no other explanation as to the basis for the award.

Pursuant to the Federal Arbitration Act, Warfield moved in the district court to enforce the award. *See* 9 U.S.C. § 9. ICON cross-moved to vacate the award. The court denied Warfield's motion and granted ICON's. The court held that "the clear, well-established law in North Carolina and the Fourth Circuit" precluded Warfield's wrongful termination without just cause claim, and that "the [arbitration] Panel chose to disregard .

---

[2] Warfield's claim sounds in state law. A party that agrees to arbitrate an employment claim arising from a specific source of substantive law "does not forgo the substantive rights afforded by the [underlying law]; [that party] only submits to their resolution in an arbitral, rather than a judicial, forum." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Warfield lives in North Carolina, and so the substantive law governing his employment relationship would appear to be North Carolina's. *See Schwarz v. St. Jude Med., Inc.*, 802 S.E.2d 783, 753–54 (N.C. Ct. App. 2017) (explaining that the law applicable to an employment dispute is "usually . . . the place of [the employee's] acceptance" of an offer of employment). Although ICON is headquartered in Colorado, ICON told the arbitrators that "in almost all respects, North Carolina law is the same." Neither party suggests that any law other than North Carolina's applies here.

. . that law." The court concluded that the "[a]ward therefore demonstrates manifest disregard [of the law] and must be vacated." Warfield now appeals.

We review a district court's decision to vacate an arbitration award *de novo*. *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 442 (4th Cir. 2020).

II.

Convincing a federal court to vacate an arbitral award is a herculean task. "Indeed, the scope of review of an arbitrator's . . . decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all — the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998). When "reviewing such an award, 'a district or appellate court is limited to determin[ing] whether the arbitrators did the job they were told to do — not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Three S Del., Inc. v. DataQuick Info. Sys.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

In addition to the very narrow statutory grounds for vacating an arbitral award found in 9 U.S.C. § 10(a), we have recognized, either "as an independent ground for review or as a judicial gloss on the [narrow] enumerated grounds for vacatur set forth" in § 10(a), that a district court may vacate an arbitral award that rests upon a "manifest disregard" of the

4

law. *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012).[3] To establish manifest disregard, a party must demonstrate: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). We consider each prong in turn.

### III.

To demonstrate that "the disputed legal principle is clearly defined and is not subject to reasonable debate," ICON had to present to the arbitrators "binding precedent requiring a contrary result." *Jones*, 792 F.3d at 402–03. ICON asserts that it did so, pointing to two sources of precedent that it contends foreclose Warfield's wrongful termination without just cause claim: North Carolina state law and our decision in *Raymond James Financial Services, Inc. v. Bishop*, 596 F.3d 183 (4th Cir. 2010).

### A.

First, ICON asserts that because North Carolina is an at-will employment state, a state court would necessarily reject Warfield's asserted wrongful termination without just

---

[3] Warfield suggests that we may wish to revisit our holding in *Wachovia Securities* that the manifest disregard theory survives the Supreme Court's decision in *Hall St. Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). *See* Warfield Br. at 52. Of course, as Warfield recognizes, sitting as a panel we cannot overrule a prior panel decision. *See McMellon v. United States*, 387 F.3d 329, 333–34 (4th Cir. 2004) (en banc). But even if we could overrule *Wachovia Securities*, we would not be inclined to do so. Since *Hall St. Associates*, the question of whether the manifest disregard theory survives has caused an entrenched circuit split. *See Bangor Gas Co., LLC v. H.Q. Energy Servs. (U.S.) Inc.*, 695 F.3d 181, 187 n.3 (4th Cir. 2012) (collecting cases). At some point, the Supreme Court or Congress will have to resolve the issue. We see little value in adding to this confusion now. This is particularly so given that the existence or nonexistence of the manifest disregard doctrine does not change the outcome here, *i.e.*, upholding the arbitration award.

cause claim. ICON cites a series of cases that do, indeed, say that North Carolina has a strong presumption of at-will employment. *See, e.g.*, *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420 (1997); *Pierce v. Atl. Grp., Inc.*, 724 S.E.2d 568 (N.C. Ct. App. 2012); *Brackett v. SGL Corp.*, 580 S.E.2d 757 (N.C. Ct. App. 2003).

The problem for ICON is that Warfield has cited cases holding that the presence of an arbitrability clause governing an employment dispute implies for-cause termination protections, *notwithstanding* a state law at-will doctrine to the contrary. Thus, the Eighth Circuit has held:

> *Even accepting that Kansas is an employment-at-will state* . . . PaineWebber's relationship with Agron under the oversight of the NASD [FINRA's predecessor] contemplated the use of the arbitration procedure as a means of settling employment-related disputes. This process necessarily alters the employment relationship from at-will to something else . . . . Accordingly, the arbitration panel had the power to determine whether the firing was justified.

*Agron*, 49 F.3d at 352 (emphasis added); *see also Liang*, 653 F.2d at 312 ("Shearson's further reply that Liang's employment was terminable at will is without merit. It has been held repeatedly that an agreement to arbitrate disputes about employee discharges implies a requirement that discharges be only for 'just cause.'").

We express no opinion on the persuasiveness of *Agron* and *Liang*; the point is that they exist, and Warfield presented them to the arbitrators. ICON has not cited, either to the arbitrators or to us, any North Carolina case rejecting the specific proposition that the arbitrability of an employment relationship implies for-cause protections. We have previously explained that in the absence of clearly on-point and controlling precedent, the fact that courts disagree on a particular legal question weighs against second-guessing an

6

arbitrator's award. *See Richmond, Fredericksburg & Potomac R. Co. v. Transp. Comms. Int'l Union*, 973 F.2d 276, 382 (4th Cir. 1992) ("To be sure, the courts have failed to reach a consensus on this issue. . . . We decline to enter the fray, and conclude that the arbitrator was entitled to rely on what he thought was the law. It simply is not our place to determine which side of the conflict the arbitrator should have come down on.").

In the manifest disregard context, it is not our role to predict whether North Carolina courts *would* reject the theory embraced in *Agron* and *Liang* that arbitrability implies for-cause protection. The fact is that to date, they have not. And therefore, North Carolina's at-will doctrine cannot provide the "binding precedent requiring a contrary result" necessary to demonstrate that the arbitrators manifestly disregarded the law. *Jones*, 792 F.3d at 403.

B.

ICON also asserts that our decision in *Raymond James* affirmatively rejected *Agron* and *Liang*, such that the arbitrators disregarded clearly established controlling law.

As an initial matter, it is unclear that a federal court could *ever* establish "binding precedent requiring a contrary result" on a question of state law, at least from an arbitrator's perspective. *Jones*, 792 F.3d at 403. But even assuming that a federal court could theoretically establish controlling precedent on state law for purposes of the manifest disregard inquiry, *Raymond James* was not such a holding.

First and foremost, the holding in *Raymond James* was not based on a finding of wrongful termination. Although ICON is correct that the plaintiffs in *Raymond James* styled their claim as one for wrongful termination, we explained that "the award in this

7

case cannot be understood as based on anything other than the arbitrators' finding that Raymond James committed a breach of its 'fiduciary and legal duties' when its in-house lawyer . . . provided legal representation to the Appellants in third-party arbitration proceedings." 596 F.3d at 191.

It was because this fiduciary duty claim did not "arise[] out of" the employment relationship that we held in *Raymond James* that the arbitrators had exceeded their powers under 9 U.S.C. § 10(a)(4) — not that they had manifestly disregarded the law. *Id.* at 192–93. Thus, because the dispute actually centered on an alleged breach of fiduciary duty, any discussion of whether the *Raymond James* plaintiffs would have had a wrongful termination claim is (at least arguably) dicta. We suggested as much in *Raymond James* itself. *See id.* at 195 ("*[W]hether or not* we believe [*Agron* and *Liang*] announced a rule of general application, we decline to follow them *under the circumstances of this case*." (emphasis added))

On this point alone, the arbitrators could have interpreted *Raymond James*' discussion of *Agron* and *Liang* to be nonbinding dicta and declined to apply it. And even if this would have been a misreading of *Raymond James*, "[a] confusing, ambiguous, or even incorrect application of the law is not manifest disregard." *Constellium Rolled Prods. Ravenswood, LLC v. United Steel Workers Int'l Union*, 18 F.4th 736, 743 (4th Cir. 2021).

Furthermore, *Raymond James*' discussion of wrongful termination is not only arguably dicta; the dicta itself is arguably distinguishable. In *Raymond James*, we explained: "it is exceedingly obscure, to say the least, as to how a wrongful termination might arise (1) inasmuch as [the plaintiffs'] respective agreements with Raymond James

8

were independent contractor agreements . . . and under circumstances in which (2) the Appellants voluntarily terminated the agreements themselves." 596 F.3d at 191. Here, Warfield was an employee rather than a contractor, and he did not quit or otherwise voluntarily terminate his employment. It is not entirely clear what role these factors played in *Raymond James*, and so the extent to which that case's discussion of wrongful termination is distinguishable is "subject to reasonable debate." *Interactive Brokers*, 969 F.3d at 442.

For all these reasons, *Raymond James* does not provide the indisputably "binding precedent requiring a contrary result" that would establish that the arbitrators manifestly disregarded the law. *Jones*, 792 F.3d at 403.

## C.

The arbitrators had before them on the one hand, *Agron* and *Liang* holding that arbitrability implies for-cause termination protections, and on the other hand, North Carolina caselaw establishing a presumption of at-will employment and a Fourth Circuit case that could be read to criticize *Agron* and *Liang*. Even if we agree with ICON that it had the better of the argument before the arbitrators, the point remains that there is still an argument. Because the issue is "subject to reasonable debate," *Interactive Brokers*, 969 F.3d at 442, the arbitrators could not have manifestly disregarded the law by determining that Warfield could pursue a wrongful termination claim.

9

IV.

Moreover, even if ICON established to our satisfaction that, under North Carolina law, courts would not recognize Warfield's wrongful termination without just cause claim, ICON has not demonstrated that the arbitrators "refused to heed" that law. *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 350 (4th Cir. 2008) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). This prong of the manifest disregard analysis requires something more than merely establishing that the arbitrators misapplied the law; instead, it requires evidence that they knowingly rejected a controlling precedent. *See Remmey*, 32 F.3d at 149 ("[A] court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award. Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision.").[4]

That matters here, because arbitrators cannot choose to reject a controlling legal principle unless they have been presented with that specific principle and told why it is dispositive. *Three S* is instructive. There, 3S sought vacatur on the grounds that the "arbitrator manifestly disregarded California law by awarding . . . both breach of contract

---

[4] We did not reach the question in *Interactive Brokers* of whether we continue to adhere to the rule, expressed in *Three S*, that the party seeking vacatur must prove that it made the arbitrator aware of the relevant legal principle. 969 F.3d at 442 fn.1. We take this opportunity to clarify that we have not jettisoned this knowledge requirement. Instead of rejecting the requirement, we have subsumed it into the second prong of our more recent description of the manifest disregard test. This is because an arbitrator cannot "refuse[] to apply [a] legal principle" of which it is unaware. *Jones*, 792 F.3d at 402.

10

and unjust enrichment damages . . . [even though] under California law, these remedies are mutually exclusive." 492 F.3d at 529. But because 3S did "not point to any indication in the record where the arbitrator discussed or was presented with" the relevant law, we refused to vacate the award on this ground. *Id.* at 529. Similarly, although 3S "generally pleaded a statute of limitations defense," because it did "not present[] any evidence that the arbitrator was advised of the specifics of the statute of limitations provisions and then expressly ignored them," we also refused to vacate the award on those grounds. *Id.* Instead we held that the arbitrator did not manifestly disregard the law.

In this case, ICON did make the arbitrators aware of North Carolina's presumption of at-will employment and of *Raymond James*. But if there is a North Carolina case rejecting the *Agron-Liang* theory, ICON never cited that precedent to the arbitrators (or to us, for that matter). Like the statute of limitations defense in *Three S*, ICON therefore cannot establish manifest disregard because even if it made the arbitrators aware of the "general[] [employment at-will] defense," it did "not present[] any evidence" on the "specific[]" point at issue. *Id.*

Indeed, ICON only cited *Raymond James* to the arbitrators as follows:

Finally, as the Fourth Circuit noted in *Raymond James Fin. Servs. [v]. Bishop*, 596 F.3d 183, 194 (4th Cir. 2010), "[t]he genesis of the principle applied in those cases [citing, *inter alia*, *Liang*, the only cases relied upon by Warfield], was in [the] context of arbitration provisions contained in collective bargaining agreements." Such arbitration provisions, almost by definition, contain a just cause for discharge requirement not remotely present here.

11

(second and third alterations in original).  The quotation from *Raymond James* is, of course, accurate.[5]  But if that is all the arbitrators knew about that decision — which is what we must presume — then the arbitrators only knew that we had previously noted a possible basis for distinguishing *Agron* and *Liang*.  So although ICON now urges an expansive reading of *Raymond James*, even if that more expansive reading is correct, ICON cannot show that the *arbitrators* "refused to heed" our precedent.  *Long John Silver's*, 514 F.3d at 350.

Moreover, the award contained no explanation of how the arbitrators determined that Warfield could bring a claim for wrongful termination without just cause.  As ICON acknowledged, the parties could have requested an *explained* decision from the arbitrators but apparently did not do so.  Oral Argument at 34:37–35:27, *Warfield v. ICON Advisers, Inc.* (4th Cir. Jan. 26, 2022) (No. 20-1690), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1690-20220126.mp3; *see also* FINRA Rule 13904(g).

Of course, "arbitrators are not required to explain their reasoning." *Wachovia Secs., LLC*, 671 F.3d at 481.  But when arbitrators do not provide any explanation, we cannot simply impute manifest disregard. *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 862 (4th Cir. 2010) ("It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum

---

[5] *Raymond James* could be misread on this point — although the principle at issue may have *originated* in the collective bargaining context, it did not remain confined there. *Agron*, for example, involved the arbitration of a securities dealer's claim under the NASD, FINRA's predecessor.

award in an attempt to analyze their reasoning." (collecting cases)). Instead, when arbitrators do not explain how they reached a given result, the party seeking vacatur "must show that it would be manifest disregard of the law to" reach that outcome by each and every conceivable route. *Interactive Brokers*, 969 F.3d at 444.

ICON has not done so here. As we have explained, it would not have been manifest disregard of the law to determine that the relevant language in *Raymond James* is either inapplicable or dicta, nor to determine that North Carolina had not specifically rejected the *Agron-Liang* theory. Because the arbitrators had these routes available and we do not know that they did *not* take them, ICON has not met its exceedingly heavy burden of establishing that the arbitrators manifestly disregarded the law.

V.

In this case, as in almost all manifest disregard cases, the sky-high standard of judicial review is the beginning and the end of our analysis. Neither North Carolina law nor our decision in *Raymond James* established "binding precedent requiring a contrary result" from the outcome that the arbitrators reached. *Jones*, 792 F.3d at 403. And even if there were such a binding precedent, ICON has not met its heavy burden of showing that the arbitrators knew of and "refused to heed" that precedent. *Long John Silver's*, 514 F.3d at 350. Therefore, the judgment of the district court is

*REVERSED.*

13